1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

## SOUTHERN DISTRICT OF CALIFORNIA

10

11 JORGE ESCAMILLA AVINA, on behalf of himself and all others similarly situated,

12
                                        Plaintiff,

13          v.

14 PATENAUDE & FELIX, APC; CREDIT CORP. SOLUTIONS, INC.; THOMAS FLYNN,

15
16
                                        Defendants.
17
18
19

Case No. 20-cv-00166-BAS-MDD

**ORDER:**

**(1) GRANTING IN PART AND DENYING IN PART DEFENDANT PATENAUDE & FELIX, APC AND CREDIT CORP. SOLUTIONS, INC.'S MOTION TO DISMISS (ECF No. 16);**

**AND**

**(2) DENYING DEFENDANT THOMAS FLYNN'S MOTION TO DISMISS (ECF No. 17)**

20          Before the Court are two Motions to Dismiss filed by Defendants Patenaude & Felix,

21 APC and Credit Corp. Solutions, Inc. (the "Entity Defendants") and individual Defendant

22 Thomas Flynn. (ECF Nos. 16, 17.)  Plaintiff opposes both Motions (ECF Nos. 19, 20) and

23 Defendants reply.   (ECF Nos. 21, 22.)   The Court finds both Motions suitable for

24 determination on the papers submitted and without oral argument.  *See* Fed. R. Civ. P.

25 78(b); CivLR 7.1(d)(1).  For the reasons stated below, the Court **GRANTS IN PART** and

26 **DENIES IN PART** the Entity Defendants' Motion and **DENIES** Defendant Flynn's

27 Motion.

28

## I.   **FACTUAL BACKGROUND**

Plaintiff Jorge Escamilla Avina ("Plaintiff") commenced this action on January 24, 2020.  (ECF No. 1.)  Plaintiff filed the operative First Amended Complaint ("FAC") on April 14, 2020.  (ECF No. 9.)

This action stems from Plaintiff's alleged default on a consumer credit card account in 2016.  (FAC ¶ 13.)  The original creditor, Synchrony Bank, assigned the debt to Defendant Credit Corp. Solutions, Inc. ("CCS").  (*Id.*)  CCS retained Defendant Patenaude & Felix, APC ("P&F"), which then filed a debt collection lawsuit in state court on June 11, 2019.  (*Id.* at 14.)  P&F hired Defendant Flynn as a private process server to serve the summons and complaint on Plaintiff.  (*Id.*)

On July 12, 2019, Flynn filed a proof of service with the state court representing that on July 1, 2019, Flynn completed personal service upon Plaintiff at his residence.  (FAC ¶ 15.)  However, Plaintiff states that he was not home at this time and therefore could not have been personally served.  (*Id.*)  Consequently, Plaintiff filed a motion to quash service and attached a timecard showing that he was working at the time of the alleged personal service.  (*Id.* ¶ 16.)  In response, the Entity Defendants sent Flynn to re-serve the summons and complaint; he again filed a proof of service indicating that he personally served Plaintiff at his residence on November 9, 2019, mooting the motion to quash.  (*Id.*)  Again, however, Plaintiff alleges he was not home at this time and claims that his mother "found CCS' lawsuit lying on the front porch[.]" (*Id.*)  Plaintiff filed a second motion to quash, which was again mooted by Defendants' request to dismiss the action without prejudice on January 2, 2020.  (*Id.* ¶ 17.)

Plaintiff states that Flynn's filing of false proofs of service violates the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692, *et seq.*  (FAC ¶ 19.)  Specifically, Plaintiff claims that Flynn's actions: (1) constitute conduct the natural consequence of which is to harass the debtor in connection with the collection of a debt (15 U.S.C. § 1692d); (2) falsely represent the legal status of the debt and use false representations and

deceptive means in an attempt to collect a debt (*id.* § 1692e(2)(A), 1692e(10)); and (3) use unfair and unconscionable means in an attempt to collect a debt (*id.* § 1692f).  (FAC ¶ 27.)

In addition, Plaintiff states that CCS and P&F are vicariously liable for Flynn's violations because they knew or should have known that Flynn regularly conducts "sewer service"[1] on plaintiffs yet continue to use him to serve CCS's debt collection lawsuits and that their compensation arrangement with Flynn incentivizes his dishonest conduct.  (*Id.* ¶¶ 29–35.)

In support of Plaintiff's first contention, the FAC includes data reflecting Flynn's "unrealistically high percentage" of lawsuits purportedly personally served on defendants in debt collection cases, the equally high number of nonresponsive defendants who were supposedly personally served, and Flynn's "inexplicable descriptions" of people allegedly personally served.  (FAC ¶¶ 33–34.)  Plaintiff claims that this data has "at all times been readily available to [P&F] and CCS," but that they nonetheless "continue to exclusively use Flynn to serve CCS' debt collection lawsuits," indicating that both the Entity Defendants "willfully ignored" and "knowingly profit off" Flynn's fraudulent conduct by continuing to use his services.  (*Id.*)  As to the second allegation, Plaintiff claims that because P&F and CCS pay Flynn only for completed service, "Flynn is incentivized . . . to complete service on the first attempt by either claiming 'personal service' or by claiming the address is not valid for service."  (*Id.* ¶ 34.)

Plaintiff brings the action on behalf of himself and a class of all persons: (1) residing in California; (2) against whom Defendants "jointly filed proofs of 'personal service' of process in the San Diego County Superior Court of the State of California . . . in debt collection lawsuits in which the person was not personally served with process"; and (3) in an attempt to collect personal, family, or household debts from January 24, 2019 to the date of class certification.  (*Id.* ¶ 37.)

---

[1] "Sewer service" occurs when the defendant "fail[s] to serve a debtor and fil[es] a fraudulent affidavit attesting to service so that when the debtor later fails to appear in court, a default judgment can be entered against them."  *Holmes v. Elec. Document Processing, Inc.*, 966 F. Supp. 2d 925, 929 (N.D. Cal. 2013).

## II.    LEGAL STANDARD

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the claims asserted in the complaint. Fed. R. Civ. P. 12(b)(6); *Navarro v. Block*, 250 F.3d 729, 731 (9th Cir. 2001). The court must accept all factual allegations pleaded in the complaint as true and must construe them and draw all reasonable inferences from them in favor of the nonmoving party. *Cahill v. Liberty Mutual Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). To avoid a Rule 12(b)(6) dismissal, a complaint need not contain detailed factual allegations, rather, it must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

"[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (alteration in original)). A court need not accept "legal conclusions" as true. *Iqbal*, 556 U.S. at 678. Despite the deference the court must pay to the plaintiff's allegations, it is not proper for the court to assume that "the [plaintiff] can prove facts that [he or she] has not alleged or that defendant[] ha[s] violated the…laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

## III.    ANALYSIS

The Entity Defendants' Motion to Dismiss and Flynn's Motion to Dismiss make several overlapping arguments to support dismissal under Federal Rule of Civil Procedure 12(b)(6). First, as threshold issues, they claim Plaintiff lacks standing to bring an FDCPA

claim and that the litigation privilege applies to preclude this action.  Second, Defendant Flynn alleges that he falls under an FDCPA exemption for process servers and therefore does not meet the definition of a "debt collector."  Correspondingly, the Entity Defendants argue that they cannot be held directly or vicarious liable for Flynn's actions.  Lastly, the Entity Defendants argue that Plaintiff has not sufficiently stated violations of the FDCPA and all Defendants dispute that he has adequately stated class claims.

## A.   Standing

Defendants argue that Plaintiff has no standing to pursue this federal action because he has not alleged any concrete injury resulting from Defendants' purported filing of fraudulent proofs of serve in the state debt collection lawsuit.  (Entity Defs.' Mot. to Dismiss ("Entity Defs.' Mot.") at 23–25, ECF No. 16; Flynn's Mot. to Dismiss ("Flynn's Mot.") at 2–3, ECF No. 17.)  Plaintiff counters that he has sufficiently alleged several concrete injuries arising from Defendants' fraudulently filed proofs of service, including: "the simulations of legal process," the "greater risk of falling victim to denial of due process and . . . waiver of opportunity to defend," being subjected to an attempt to collect the cost of the fraudulent service of process, and "the common law harm of abuse of process."  (Pl.'s Opp'n to Entity Defs.'  Mot. at 18–24, ECF No. 19; *see also* Pl.'s Opp'n to Flynn's Mot. at 7–10.)

"Article III of the Constitution limits the jurisdiction of federal courts to 'Cases' and 'Controversies.'"  *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157 (2014).  The doctrine of standing serves to identify whether a case or controversy appropriate for judicial resolution under Article III exists.  *See Lujan v. Defs.'' of Wildlife*, 504 U.S. 555, 560 (1992).  To satisfy the requirements for standing, a plaintiff must show

> (1) it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

20cv166

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000) (citing *Lujan*, 504 U.S. at 560–61).

As to concreteness, which is the element of standing disputed in the instant action, the Supreme Court has held that a concrete injury must "actually exist" but does not require that it be tangible. *Spokeo, Inc. v. Robins*, -- U.S. --, 136 S. Ct. 1540, 1549 (2016). "In determining whether an intangible injury is sufficiently concrete, [courts] consider both history and legislative judgment." *Patel v. Facebook, Inc.*, 932 F.3d 1264, 1270 (9th Cir. 2019) (citing *Spokeo*, 136 S. Ct. at 1549). Regarding legislative judgment, the Court noted that "Congress is well positioned to identify intangible harms that meet minimum Article III requirements" and "has the power to define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before." *Spokeo*, 136 S. Ct. at 1549.

"[W]hile [a plaintiff] may not show an injury-in-fact merely by pointing to a statutory cause of action, the Supreme Court also recognized that some statutory violations, alone, do establish concrete harm." *Robins v. Spokeo, Inc.*, 867 F.3d 1108, 1113 (9th Cir. 2017) (citing *Spokeo*, 136 S. Ct. at 1549). Specifically, "an alleged procedural violation [of a statute] can by itself manifest concrete injury where Congress conferred the procedural right to protect a plaintiff's concrete interests and where the procedural violation presents 'a risk of real harm' to that concrete interest." *Strubel v. Comenity Bank*, 842 F.3d 181, 190 (2d Cir. 2016) (quoting *Spokeo*, 136 S. Ct. at 1549); *see Patel*, 932 F.3d at 1270 ("[A] violation of a statutory procedural requirement that does not present a material risk of harm . . . likely does not cause a concrete injury."); *Lyshe v. Levy*, 854 F.3d 855, 859 (6th Cir. 2017) ("*Spokeo* allows for a bare procedural violation to create a concrete harm . . . [based on] the failure to comply with a statutory procedure that was designed to protect against the harm the statute was enacted to prevent.").

Thus, when evaluating a claim of harm, the Ninth Circuit has instructed that courts must ask: "(1) whether the statutory provisions at issue were established to protect [a plaintiff's] concrete interests (as opposed to purely procedural rights), and if so, (2) whether

the specific procedural violations alleged in this case actually harm, or present a material risk of harm to, such interests." *Robins*, 867 F.3d at 1113.

### 1.   Purpose of the FDCPA

Regarding the first prong of the analysis, the Court turns to the purpose of the FDCPA and the specific subsections cited by Plaintiff.  Congress enacted the FDCPA "to eliminate abusive debt collection practices, to ensure that debt collectors who abstain from such practices are not competitively disadvantaged, and to promote consistent state action to protect consumers." *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 577 (2010); *Clark v. Capital Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1171 (9th Cir. 2006) (quoting S. Rep. N. 95-382, at 1 (1977)) ("Legislative history indicates that Congress enacted the FDCPA to protect consumers from 'improper conduct' and illegitimate collection practices 'without imposing unnecessary restrictions on ethical debt collectors.'").  Collection practices include litigation activities. *See Heintz v. Jenkins*, 514 U.S. 291, 292 (1995)) ("[L]itigating . . . seems simply one way of collecting a debt."). Because the FDCPA is a remedial statute, courts are required to liberally interpret its purpose, which "is animated by the likely effect of various collection practices on the minds of unsophisticated debtors." *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1033 (9th Cir. 2010) (quotations omitted).

The Court finds it clear that the text of the relevant FDCPA provisions further the statute's stated purpose by protecting a consumer's *substantive* right to be free from specific abusive debt collection practices, including conduct that is "harassing, oppressive, or abusive," "false, deceptive, or misleading," or "unfair or unconscionable."  15 U.S.C. §§ 1692d, 1692e(2)(A), 1692e(10), 1692f.  Indeed, the legislative history of the statute confirms that the non-exhaustive lists of violative conduct contained in these subsections are intended to capture abuses such as "simulating legal process," "utilizing bogus legal documents," and any other improper conduct "not specifically addressed" but brought before a court. *See Freeman v. ABC Legal Servs. Inc.*, 827 F. Supp. 2d 1065, 1074 (N.D. Cal. 2011) (citing S. Rep. No. 95-382, at 1, 7).  These provisions are therefore not merely

imposing procedural requirements on debt collectors but "'creat[ing] a private duty owed personally to' a consumer by a debt collector to refrain from using false, deceptive, or misleading means or representations in attempting to collect a debt." *Watkins v. Inv. Retrievers, Inc.*, No. 2:17-CV-01348-KJM-CKD, 2018 WL 558833, at *3 (E.D. Cal. Jan. 24, 2018) (quoting *Spokeo*, 136 S.Ct. at 1554 (Thomas, J., concurring)); *see Brown v. R & B Corp. of Va.*, 67 F. Supp. 3d 691, 700 (E.D. Va. 2017) (quoting 15 U.S.C. § 1692(e)) ("Stated differently, Congress granted consumers a substantive right in being free from 'abusive debt collection practices.'"); *Irvine v. I. C. Sys.*, 198 F. Supp. 3d 1232, 1236 (D. Colo. 2016) ("Through the FDCPA, Congress created statutory legal rights to be free from certain abusive debt collection practices.").

Thus, the Court finds that the FDCPA codifies Plaintiff's concrete interest in being free from abusive debt collection practices, and the statutory provisions at issue here were specifically established to protect that concrete interest.

### 2. Material Risk of Harm

The question under the second prong of the analysis is whether the filing of allegedly fraudulent proofs of service in the state debt collection action caused harm, or created a material risk of harm, to Plaintiff's aforementioned concrete interests under the FDCPA. The Court finds that it did.

As stated by the Ninth Circuit, the FDCPA is intended, in part, to ensure "consumers are fully and truthfully apprised of the facts and of their rights,' . . . enabl[ing] them 'to understand, make informed decisions about, and participate fully and meaningfully in the debt collection process.'" *Tourgeman v. Collins Fin. Servs.*, Inc., 755 F.3d 1109, 1122 (9th Cir. 2014) (quoting *Clark*, 460 F.3d at 1171), *as amended on denial of reh'g and reh'g en banc* (Oct. 31, 2014). These principles are also enshrined in the constitutional requirement of procedural due process, which fundamentally requires "the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quotations omitted). Service of process is essential to facilitating this full and meaningful participation because it "apprise[s] interested parties of the pendency of the

action and afford[s] them an opportunity to present their objections." *Rio Properties, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1016 (9th Cir. 2002) (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).

Taking Plaintiff's allegations regarding the filing of fraudulent proofs of service as true, the Court finds that this presented a material risk to Plaintiff's ability to properly engage in his own defense in the state debt collection action. Any misrepresentation regarding service—especially one purporting that proper measures were taken to put a defendant on notice when, in fact, they were not—risks that an action can proceed without affording the defendant an opportunity to advocate in his own interest. Fraudulent service thus increases the risk that judgments will issue against consumers for outstanding debts under the false pretense that consumers were notified of an action against them but forfeited their right to raise a defense. This falls squarely within the statutory protection afforded by the FDCPA. *See Freeman*, 827 F. Supp. 2d at 1074 (noting that the legislative history of the FDCPA sought to prohibit "simulating legal process" or the use of "bogus legal documents" to collect debts under the false pretense of imminent legal action).

To the extent Defendants argue that Plaintiff's claim is mooted by the dismissal, the Court disagrees. Other courts have proceeded to adjudicate "sewer service" claims under the FDCPA even where a default judgment had been set aside by the state courts. *See Rubio v. LVNV Funding, LLC*, No. C 14-05395 JSW, 2015 WL 13650046, at *6 (N.D. Cal. July 21, 2015) (noting that, where false proofs of service were at issue, a live controversy under the FDCPA existed even though the court set aside default judgment because "Plaintiff's claims of abusive and deceptive conduct by the debt collectors [had] not yet been addressed"); *see also Picard v. ABC Legal Services, Inc.*, No. 5:14–cv–04618, 2015 WL 3465832, at *5 (N.D. Cal. June 1, 2015) (finding a triable issue of fact remained on summary judgment as to whether defendants filed a materially false proof of service even after the state court set aside entry of default judgment). Therefore, the fact that the Entity

Defendants ultimately dismissed the underlying state collection lawsuit against Plaintiff is of no import.[2]

Because Plaintiff alleges FDCPA violations that presented a real risk of harm to the concrete interests established by the statute, the Court finds that Plaintiff has standing to bring the instant action and rejects Defendants' arguments to the contrary.

## B.   Litigation Privilege

Defendants also argue that Plaintiff's claims must fail because Defendants' actions are protected by California's litigation privilege.  (Entity Defs.'' Mot. at 23; Flynn's Mot. at 6.)  Under California law, publications made in the discharge of an official judicial duty are privileged and cannot be the basis for the imposition of legal liability.  Cal. Civ. Code § 47(b).  The litigation privilege "applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action."  *Rusheen v. Cohen*, 37 Cal. 4th 1048, 1057 (2006).

However, by virtue of the Supremacy Clause of the Constitution, "the California litigation privilege does not apply to federal causes of action, including FDCPA claims." *OEI v. N Star Capital Acquisitions, LLC*, 486 F. Supp. 2d 1089 (C.D. Cal. 2006) (citing cases); *see also Graham-Sult v. Clainos*, 756 F.3d 724, 742 (9th Cir. 2014) (citing *OEI's* holding with approval).  Defendants offer no counterargument.  Accordingly, the Court finds that this argument fails as a matter of law.

---

[2] Defendants cite to three cases to support their argument that no concrete injury exists since the case was dismissed without prejudice by the state court.  (*See* Entity Defs.' Mot. to Dismiss at 24–25 (citing *Burns v. Midland Funding*, No. 18-13637, 2019 WL 3003598 (E.D. Mich. July 10, 2019), *Mishniot v. Int'l Recovery Sys.*, No. 2:16-cv-01061-JAD-PAL, 2017 Wl 714345 (D. Nev. Feb. 22, 2017), *Johnston v. Midland Credit Mgmt*, 229 F. Supp. 3d 625 (W.D. Mich. 2017)); Flynn's Mot. to Dismiss at 2–3 (citing same).)  The Court does not find these cases persuasive.  Because two decisions were issued by district courts outside this circuit and the third predates the Ninth Circuit's decision in *Robins*, none of them address the two-part test requiring courts to consider congressional judgment when making a concreteness inquiry for a procedural violation of a statute.  867 F.3d at 1112.

### C.   Sufficiency of Allegations

"The FDCPA is a strict liability statute that 'makes debt collectors liable for violations that are not knowing or intentional.'" *Donahue*, 592 F.3d at 1030 (quoting *Reichert v. Nat'l Credit Sys., Inc.*, 531 F.3d 1002, 1005 (9th Cir. 2008)). "To establish a violation of the FDCPA, a plaintiff must show that: (1) plaintiff is a consumer; (2) plaintiff has been the object of collection activity arising from a consumer "debt" within the meaning of the FDCPA; (3) defendant is a 'debt collector' as defined by the FDCPA; and (4) defendant has engaged in an act or omission in violation of the prohibitions or requirements of the FDCPA." *Miranda v. Law Office of D. Scott Carruthers*, No. 1:10-CV-01487 OWW, 2011 WL 2037556, at *4 (E.D. Cal. May 23, 2011) (citing *Turner v. Cook*, 362 F.3d 1219, 1227–28 (9th Cir. 2004)).

It is undisputed that Plaintiff is a consumer and was the object of collection activity arising from a consumer debt. However, Defendants make several arguments as to why the latter two factors are not met. The Court addresses them below.

#### 1.   Whether the conduct alleged states a violation of the FDCPA

Defendants also argue that the "sewer service" alleged in the FAC is not the type of conduct that qualifies as a violation of the FDCPA and that Plaintiff's motion to quash and Defendants' dismissal of the state court proceeding essentially removes this action from the FDCPA's scope. (Entity Defs.'' Mot. at 14, 18–22; Flynn's Mot. at 5.) They also claim that Plaintiff's claim should fail because a signed proof of service creates a presumption of validity that Plaintiff cannot rebut by merely denying service occurred. (Entity Defs.' Mot. at 13–14; Flynn's Mot. at 5–6.)

The Court rejects Defendants' first contention that because the alleged service does not involve "violence or threat of violence, obscene language, or any of the examples of prohibited conduct enumerated" in the statute, it cannot state a claim for an FDCPA violation. (Entity Defs.' Mot. at 18; Flynn's Mot. at 5.) First, each subsection of the statute at issue expressly prefaces the list of enumerated conduct by stating that it does not "limit[] the general application of the foregoing," thus establishing that the conduct listed is not

exhaustive.  *See* 15 U.S.C. §§ 1692d–f; *see also Gonzales v. Arrow Fin. Servs., LLC*, 660 F.3d 1055, 1061 (9th Cir. 2011) ("The Act includes a non-exhaustive list of examples of proscribed conduct.").   Moreover, the same analysis that found the process server exemption inapplicable to Flynn's "sewer service" applies here to establish that such conduct is abusive.  *See Ansari*, 2013 WL 4647621, at *7 ("[T]he same conduct that removes a defendant from the process server exception and renders him a debt collector— the falsification of service of process—also constitutes the abusive or harassing practice under the fourth element of the statute.").  Also, other courts in this circuit have found very similar claims adequate to allege violations of the FDCPA provisions at issue as to process servers, attorney services providers, and others.  *See Holmes*, 966 F. Supp. 2d at 935 (finding allegation that process server filed a false proof of service sufficiently stated violations of §§ 1692d and 1692e (including subsections (2) and (10), and 1692f) against process server); *Freeman*, 827 F. Supp. 2d at 1075–76 (holding that factual allegations of "sewer service" adequately pled violations of §§ 1692d, 1692e, and 1692f against process server).  The Court thus finds the allegation that Flynn fabricated affidavits of service to fraudulently reflect that he personally served Plaintiff suffices to state an FDCPA claim against him.

The Court also easily disposes of the last two contentions.  As stated in Section III.A.2, *supra*, the Entity Defendants' discretionary acts in state court, including declining to oppose Plaintiff's motion to quash improper service and ultimately dismissing the action, do not absolve Defendants from potential liability for the alleged abusive and deceptive conduct, which itself still violated the FDCPA.  *See Rubio*, 2015 WL 13650046, at *6.  As to the contention that Plaintiff's claims must fail because of the presumption of valid service, this argument is premature.  "The question presented by a motion to dismiss is not whether the plaintiff will prevail in the action, but whether the plaintiff is entitled to offer evidence in support of the claim."  *Freeman*, 827 F. Supp. 2d at 1069.  Plaintiff may still overcome this presumption at a later stage in this proceeding "through the presentation of contradictory evidence."  *Holmes*, 966 F. Supp. 2d at 935 (citing *Sherlock v. Montefiore*

- 12 -

*Med. Ctr.*, 84 F.3d 522, 526 (2d Cir. 1996)).  As such, the Court finds, notwithstanding the presumption, that Plaintiff's claim is enough to meet the Rule 12(b)(6) standard.  *See id.*

Hence, the Court denies Defendants' motions to dismiss the FDCPA claims on the basis that the facts, as alleged, do not amount to FDCPA violations.[3]

### 2.   Whether Defendant Flynn is a debt collector

Defendant Flynn argues that he cannot be held directly liable because he is "solely a process server" and therefore falls within the FDCPA's process server exemption. (Flynn's Mot. at 4.)  The Court rejects this argument.

"To be held directly liable for violating the FDCPA, a defendant must, as a threshold requirement, be a 'debt collector,' within the meaning of the statute."  *Huy Thanh Vo v. Nelson & Kennard*, 931 F. Supp. 2d 1080, 1087 (E.D. Cal. 2013) (citing *Heintz*, 514 U.S. at 293).  The FDCPA defines "debt collector" to include: (1) "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts," and (2) any person "who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  15 U.S.C. § 1692a(6); *McAdory v. M.N.S. & Assocs., LLC*, 952 F.3d 1089, 1092 (9th Cir. 2020) (referring to the first definition as the "principal purpose" prong and to the second definition as the "regularly collects" prong).

However, the statute expressly excludes six categories of people or entities from the definition of "debt collector."  15 U.S.C. § 1692a(6)(A)–(F).  Relevant here is the "process server exemption" that applies to people who are "serving or attempting to serve legal process on any other person in connection with the judicial enforcement of any debt."  *Id.* § 1692a(6)(D).  "However, when someone who would otherwise qualify for the exemption 'goes beyond being merely a messenger in serving process and engages in prohibited abusive or harassing activities to force an individual to repay a debt,' the exemption no

---

[3] This analysis applies only to Defendants' arguments that Plaintiff's claim fails because "sewer service" does not violate the FDCPA and because Defendants' subsequent state court conduct moots Plaintiff's claim.  The Court separately addresses the Entity Defendants' argument that Plaintiff's claim fails because he has not sufficiently stated a basis for vicarious liability in Section III.C.3.b, *infra.*

longer applies and the process server is subject to FDCPA liability." *Freeman*, 827 F. Supp. 2d at 1073 (quoting *Flamm v. Sarner & Assocs., P.C.*, No. 02-4302, 2002 WL 31618443, at *5 (E.D. Pa. Nov. 6, 2002)).

Plaintiff alleges that Flynn twice provided executed proofs of service reflecting that he personally served Plaintiff at his home during times at which Plaintiff was not home. (FAC ¶¶ 15, 16.)  Contrary to Flynn's characterization, this alleged conduct reflects that Flynn took on a role beyond "solely a process server."  As explained above, a process server who makes false claims about personal service and provides perjured affidavits can preclude a defendant's participation in the litigation and, consequentially, affect the outcome of the case.  Because the Court must presume the truth of Plaintiff's claims at this stage, the Court finds that the factual allegations regarding Flynn's actions sufficiently state abusive conduct that remove him from the ambit of the process server exemption.  *See Freeman*, 827 F. Supp. 2d at 1073; *see also Ansari v. Elec. Document Processing Inc.*, No. 5:12-CV-01245-LHK, 2013 WL 4647621, at *7 (N.D. Cal. Aug. 29, 2013).

### 3.   The liability of the Entity Defendants

The Entity Defendants make several independent arguments about their liability as debt collectors that, directly and indirectly, retained Flynn's services to complete service on Plaintiff.  The Court addresses the potential theories of liability below.

#### a.   *Direct liability*

First, the Entity Defendants contend that even assuming the FAC states a claim for Flynn's liability under the statute, such liability does not extend "beyond the process server and the attorney service entity" to the current owner of the debt (CCS) or the attorneys retained by CCS to recover the debt (P&F).  (Entity Defs.' Mot. at 13.)

It is not entirely clear from this language what specific argument the Entity Defendants are making concerning their liability.  To the best of the Court's understanding, the Entity Defendants do not dispute that they are debt collectors under the FDCPA.[4]

---

[4] Even if they did, the Court notes that precedent establishes P&F and CCS qualify as "debt collectors."  The Supreme Court has held that lawyers such as P&F that seek to recover a debt through

Indeed, at times their motion appears to concede that P&F and CCS are debt collectors. (*See* Entity Defs.' Mot. at 15 ("All of the cases relied on in the First Amended Complaint deal with the issue of the process server or the attorney service being liable under the FDCPA, not the debt collector.").)

To the extent the Entity Defendants are challenging any direct liability claim that Plaintiff may be making in the FAC, the Court notes that it does not understand Plaintiff to be making such a claim.  Plaintiff does not expressly seek to hold CCS or P&F liable for their personal violations of the FDCPA; rather, the FAC attempts to hold the Entity Defendants liable for Flynn's allegedly tortious conduct by alleging that they were well aware of his fraudulent practices—and even enabled them through their compensation structure—but nonetheless continued to use his service, tacitly authorizing his FDCPA violations.  He does not allege that CCS or P&F affirmatively acted to carry out the "sewer service" in his case. *Cf. Mirshafiei v. Legal Recovery L. Offs., Inc.*, No. SACV 15-00873-CJC (DFMx), 2016 WL 11464745, at *5 (C.D. Cal. Oct. 5, 2016) (finding a plaintiff's theory against attorneys "for failing to exercise due diligence when giving the process server Plaintiff's address and subsequently filing the proof of service based on its inadequate research" to be a claim of direct, and not vicarious, liability); *Long v. Nationwide Legal File & Serve, Inc.*, No. 12-CV-03578-LHK, 2013 WL 5219053, at *9 (N.D. Cal. Sept. 17, 2013) (interpreting direct liability under FDCPA to require evidence that the debt collector was directly engaged in filing fraudulent proofs of service).[5]

---

legal action constitute debt collectors for purposes of the FDCPA. *See Heintz*, 514 U.S. at 292 (affirming Seventh Circuit's judgment that the FDCPA "applies to a lawyer who 'regularly,' through litigation, tries to collect consumer debts").  As to CCS, Plaintiff alleges that "the principal business of CCS is the purchase of defaulted consumer debt and the subsequent collection of that defaulted consumer debt using the mails, telephone and other instrumentalities of interstate commerce."  (FAC ¶ 24.)  This is sufficient to state that CCS is a debt collector as well. *See McAdory*, 952 F.3d at 1093 (citing *Barbato v. Greyston Alliance, LLC*, 916 F.3d 260 (3d Cir. 2019)) (finding claims that a defendant's "principal purpose" is to collect defaulted consumer debt, even where there is no direct interaction with consumers, is sufficient to state a claim that defendant was a debt collector under the FDCPA).

[5] Other circuits have noted the attendant confusion between direct and vicarious liability in the FDCPA context. *See Reygadas v. DNF Assocs., LLC*, 982 F.3d 1119, 1126 (8th Cir. 2020) (noting conflict between plaintiff's "direct liability" claim based on agency relationship and other "vicarious liability"

This is further supported by the format of the FAC.  Although Plaintiff dedicates a substantial amount of his pleading to alleging that the Entity Defendants knew about Flynn's fraud but failed to address it, Plaintiff states all specific factual allegations against P&F and CCS under the header "Vicarious Liability."  (FAC ¶¶ 29–35.)  Also, Plaintiff's counterarguments in his opposition to the Entity Defendants' motion all concern agency relationships in the context of vicarious liability.  (*See generally*, Pl.'s Opp'n to Entity Defs.' Mot.)  As explained in more detail below, the Ninth Circuit very clearly states that agency principles underpin vicarious liability for FDCPA violations.  *See Clark*, 460 F.3d at 1173.

Therefore, the Court construes the allegations in the FAC to state claims only for vicarious liability against the Entity Defendants and will only address their liability in that context.  *See Twombly*, 550 U.S. at 562 (noting that a complaint must allege "all the material elements necessary to sustain recovery under some viable legal theory").

### b.   *Vicarious liability*

To the best of the Court's understanding, the Entity Defendants argue that Plaintiff's vicarious liability claims fail because (1) vicarious liability does not attach as a matter of law to actions taken by an independent contractor, and therefore CCS and P&F are improperly named defendants (Entity Defs.' Mot. at 12–14); (2) no agency relationship existed between Entity Defendants and Flynn to impose vicarious liability (*id.* at 14–18); and (3) Entity Defendants cannot be vicariously liable because Flynn acted outside the scope of his duties (*id.* at 28).

"Although the FDCPA does not expressly address vicarious liability, courts have held that vicarious liability may obtain where both parties are debt collectors." *Freeman*, 827 F. Supp. 2d at 1076 (citing *Fox v. Citicorp Credit Svcs., Inc.*, 15 F.3d 1507 (9th Cir.

---

characterizations of FDCPA claims based on actions taken by third parties); *Pollice v. National Tax Funding, L.P.*, 225 F.3d 379, 405 (3d. Cir. 2000) (considering a case on vicarious liability grounds because the plaintiffs' argument that a defendant was "directly liable seem[ed] . . . to implicate vicarious liability principles because they contend that [the defendant's] involvement in the debt collection is through the other defendants"), *abrogated on other grounds by Henson*, 137 S. Ct. 1718.

- 16 -

1994).  "The rationale behind vicarious liability in this context is that if an entity is a debt collector and hence subject to the FDCPA, it should bear the burden of monitoring the activities of those it enlists to collect debts on its behalf."  *Id.* (citing *Pollice*, 225 F.3d at 404.

 "Under general principles of agency—which form the basis of vicarious liability under the FDCPA—to be liable for the actions of another, the 'principal' must exercise control over the conduct or activities of the 'agent.'"  *Clark*, 460 F.3d at 1173 (citing *Newman v. Checkrite California, Inc.*, 912 F. Supp. 1354, 1370 (E.D. Cal. 1995) (superseded by statute on other grounds)); *see also Huy Thanh Vo*, 931 F. Supp. 2d at 1088–89.  Agency may be established under federal common law principles by express authorization, implicit authorization, or ratification.  *Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 878 (9th Cir. 2014) (citing Restatement (Third) of Agency (2006) §§ 2.01, 2.03, 4.01), *aff'd*, 577 U.S. 153 (2016), *as revised* (Feb. 9, 2016).[6]

As to the Entity Defendant's first argument, the Court does not find that by virtue of Flynn's independent contractor status, neither CCS nor P&F can be held vicarious liable for his alleged violations of the FDCPA.  As the Eastern District explained in *Newman*:

> Under general rules of agency, one who contracts to act on behalf of another and is subject to the other's control, may be both an agent and an independent contractor.  *See* Restatement of Agency Second §§ 2, 14N; *Harby v. Saadeh*, 816 F.2d 436, 439 (9th Cir. 1987).  Accordingly, employers may be liable for the acts of independent contractors when an agency relationship is demonstrated.  *See Sugimoto v. Exportadora De Sal. S.A. De C.V.*, 19 F.3d 1309, 1311–12 (9th Cir. 1994), *cert. denied*, 513 U.S. 1018 (1994).

---

[6] As Plaintiff notes, the Entity Defendants erroneously cite to California's test for agency relationships as the governing law in this case.  Because the FDCPA is silent on the issue of vicarious liability, this Court must apply traditional federal common law standards.  *See Thomas v. Taco Bell Corp.*, 879 F. Supp. 2d 1079, 1084 (C.D. Cal. 2012) ("Absent a clear expression of Congressional intent to apply another standard, the Court must presume that Congress intended to apply the traditional standards of vicarious liability"), *aff'd*, 582 Fed. App'x 678 (9th Cir. July 2, 2014) (per curiam); *see also Gomez*, 768 F.3d at 877 (applying *Thomas* in the TCPA context).

912 F. Supp. at 1370.  Plaintiff has adequately alleged that both CCS and P&F are debt collectors.  (*See infra* Sections III.C.2; III.C.3.a, n.4.)  Consequently, regardless of Flynn's independent contractor status, CCS and P&F may be held vicariously liable for Flynn's actions if Plaintiff has stated sufficient facts to show that Flynn was under the control of both entities.  *See Freeman*, 827 F. Supp. 2d at 1076; *see, e.g., Long*, 2013 WL 5219053, at *9 (applying *Clark* to determine whether attorney services company was vicariously liable under FDCPA for process server's "sewer service"); *McNall v. Credit Bureau of Josephine Cty.*, 689 F. Supp. 2d 1265, 1278 (D. Or. 2010) (granting summary judgment on issue of vicarious liability for violations of FDCPA where the plaintiffs did not raise a triable issue of fact the entity assigned the debt or its lawyer "exercised any control over the process server").

The Court next turns to whether Plaintiff sufficiently alleges an agency relationship between the Entity Defendants and Flynn.  Plaintiff argues that the Court can draw a reasonable inference from the FAC's allegations that both the Entity Defendants controlled Flynn because they willfully disregarded evidence that Flynn was fraudulently claiming completion of personal service and continued to use his services.  (*See* Opp'n to Entity Defs.' Mot. at 12–17 (citing FAC ¶¶ 33–34).)

However, this argument appears to conflate two theories of liability.  Facts showing that the Entity Defendants were negligent or careless in their continued use of Flynn's services do not demonstrate that they exerted the necessary control over Flynn to establish an agency relationship.  Again, the Court does not understand the FAC to state claims of liability against the Entity Defendants for their own tortious conduct, but rather only for Flynn's alleged fraud.  Thus, Plaintiff must allege sufficient facts to show not that CCS and P&F failed to address Flynn's fraud by discontinuing their professional relationship with him, but instead that they exercised a degree of control over his conduct that justifies imputing his alleged fraud to P&F and CCS, regardless of whether they were aware of it.  *See, e.g., Fox*, 1516 (concluding that Congress intended under the FDCPA to impute the actions of an attorney "to the client on whose behalf they are taken").

The Court finds that the following allegations in the FAC can be generously construed as pertaining to some degree of control: (1) P&F and CCS "exclusively use" Flynn as a process server in debt collection lawsuits; (2) they knew Flynn had lied about personally serving Plaintiff but nonetheless "hired him a second time to attempt service of process on Plaintiff" without verifying the authenticity of his affidavits (FAC ¶ 9); and (3) they incentivize his fraudulent conduct by paying Flynn only for completed service, which induced him "to complete service on the first attempt by either claiming 'personal service' or by claiming the address is not valid for service."  (FAC ¶¶ 30, 34.)

Even taking these allegations as true as required on a Rule 12(b)(6) motion, however, does not allow the Court to draw a reasonable inference that CCS or P&F exercised control over the specific actions taken by Flynn to give rise to the FDCPA violations in this case.

First, the mere act of hiring Flynn as a process server to carry out service of lawsuits is not sufficient to establish agency.  *See Hollingsworth v. Perry*, 570 U.S. 693, 713 (2013) ("Agency requires more than mere authorization to assert a particular interest.").  Second, assuming P&F and CCS compensated Flynn in a way that created perverse incentives to lie about personal service, this does not establish that either entity controlled his routine interactions with debtors that underlie his alleged "sewer service."  *Cf. Freeman*, 827 F. Supp. 2d at 1076 (finding plaintiff sufficiently alleged attorney service controlled process servers by "choosing assignments, requiring personal performance tasks, restricting the substitution or assignment of their performance or assigned tasks, requiring them to use a GPS tracking device, requiring detailed time reporting, and requiring the use of ABC's computer systems and software); *Spartalian v. Citibank, N.A.*, No. 2:12-CV-00742-MMD, 2013 WL 593350, at *4 (D. Nev. Feb. 13, 2013) (dismissing vicarious liability claims against lawyers where the plaintiff failed to allege that the defendants directed process server to falsify the affidavit of service or otherwise "exercised any control over" the process server "during the course of his improper and allegedly dishonest service of process").

20cv166

The Entity Defendants' willful disregard of the conduct of an individual who was authorized to execute an action on their behalf may reflect their negligence and even indifference, but it does not adequately allege that they exerted control over Flynn's conduct such that they may be held vicariously liable, as principals, for their agent's decision to allegedly manufacture and file fraudulent proofs of service.   The Court therefore grants the Entity Defendants' motion to dismiss Plaintiff's vicarious liability claims under the FDCPA as to CCS and P&F.   Because Plaintiff states no other basis to hold the Entity Defendants liable, the Court will dismiss Plaintiff's claims against CCS and P&F without prejudice.

### 4.   Emotional Distress

The Entity Defendants also separately challenge the sufficiency of Plaintiff's claim that their conduct has caused him "to suffer anxiety and emotional distress."  (FAC ¶ 18.) Citing to California cases concerning intentional infliction of emotional distress ("IIED"), they argue that Plaintiff's allegations of emotional distress are not of the "substantial or enduring quality" necessary to sufficiently state a claim.  (Entity Defs.' Mot. at 25–26.)

Under the FDCPA, the plaintiff may recover for "any actual damage sustained" as a result of the violations.   15 U.S.C. § 1692k(a)(1).   Courts have held that not only are emotional distress damages available to plaintiffs under the FDCPA, but also that state IIED elements do not apply to these claims; rather, a plaintiff can recover actual damages resulting from emotional distress for FDCPA violations if the plaintiff can show that they actually suffered symptoms of emotional distress.  *See Alonso v. Blackstone Fin. Grp. LLC*, 962 F. Supp. 2d 1188, 1201 (E.D. Cal. 2013) ("Other courts have compared the language of the FDCPA to the Fair Credit Reporting Act ('FCRA') to find that emotional distress damages under the FDCPA can be proven without first having to prove a cause of action under state law.") (citing cases); *Riley v. Giguiere*, 631 F. Supp. 2d 1295, 1315 (E.D. Cal. 2009); *see also Zhang v. American Gem Seafoods, Inc.*, 339 F.3d 1020, 1040 (9th Cir. 2003) (holding that the Ninth Circuit does not require that "the evidence of the emotional distress must be demonstrable, genuine, and adequately explained") (quotations omitted).

1    The Court agrees with this widely adopted approach to emotional distress under the
2    FDCPA in this circuit.  Thus, to the extent the Entity Defendants challenge Plaintiff's
3    emotional distress claim on the basis that he does not satisfy the state requirements for
4    IIED, this argument fails.  Again, the Court need only determine at this stage whether the
5    plaintiff is entitled to offer evidence in support of the claim.  Plaintiff could offer evidence
6    to support that he did, in fact, suffer actual emotional distress in the aftermath of Flynn's
7    fraudulent service and the commencement of a state court proceeding against him.  Any
8    consideration of "the actual quantum and quality" of this proof in supporting liability is an
9    inquiry reserved for summary judgment.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S.
10   242, 254 (1986).

### D.     Viability of Class Action Claims

12   Defendants also dispute class allegations on the basis that the class definition, among
13   other things, is vague, overbroad, and not ascertainable.  In essence, Defendants argue that
14   the class definition proposed by Plaintiff encompasses even those who were served by other
15   means or waived service, who appeared in their state collection lawsuits, and who were not
16   subject to default judgments. (Entity Defs.' Mot at 26–27; Flynn's Mot. at 9.)  They
17   therefore contend that the issues presented are not "capable of classwide resolution" as no
18   single adjudication could determine liability and craft a remedy applicable to all class
19   members. (*Id.*)

20   The Court agrees with Plaintiff that these arguments are premature.  Defendants do
21   not cite to any authority allowing the use of Rule 12 motions to contest the suitability of
22   class claims.  Indeed, the Ninth Circuit has stated  Rule 12(b)(6) is an inappropriate vehicle
23   for challenging class claims because a class action is a procedural device and not a claim
24   for relief subject to the authority of the rule, other Federal Rules of Civil Procedure (notably
25   Rule 23) exist to address the fitness of claims for class certification, and differing standards
26   of review govern orders on motions to dismiss and orders on class certification motions.
27   *Whittlestone, Inc. v. Handi–Craft Co.*, 618 F.3d 970, 974–75 (9th Cir. 2010); *see Clerkin*

28

*v. MyLife.Com*, No. C 11-00527 CW, 2011 WL 3809912, at *3 (N.D. Cal. Aug. 29, 2011) (denying Rule 12(b)(6) motion to dismiss class claims based on *Whittlestone*).

Defendants' challenges to Plaintiff's class claims are not appropriately resolved on the instant Motions. These inquiries are reserved for determination if and when Plaintiff moves for certification of the putative class. The Court therefore denies Defendants' Motions as to Plaintiff's class claims.

## IV.   CONCLUSION

Based on the foregoing, the Court **ORDERS** as follows:

(1)   The Entity Defendants' Motion to Dismiss (ECF No. 16) is **GRANTED IN PART** and **DENIED IN PART**. The Court denies the Entity Defendants' Motion as to Plaintiff's lack of standing, the applicability of litigation privilege, and the insufficiency of Plaintiff's class claims and emotional distress claim. However, the Court grants Defendants' Motion on the basis that Plaintiff does not sufficiently state vicarious liability against either CCS or P&F. Thus, the claims against CCS and P&F are **DISMISSED WITHOUT PREJUDICE**. Plaintiff shall have until **<u>April 7, 2021</u>** to file an amended complaint to address the pleading deficiencies noted in this Order or, alternatively, to voluntarily dismiss the Entity Defendants.

(2)   Defendant Thomas Flynn's Motion to Dismiss (ECF No. 17) is **DENIED**.

**IT IS SO ORDERED.**

DATED: March 9, 2021

Hon. Cynthia Bashant
United States District Judge

20cv166