1  Raymond A. Patenaude, Esq. (SBN 128855)
2  Stephanie J. Boone, Esq. (SBN 160182)
   PATENAUDE & FELIX APC
3  9619 Chesapeake Drive, Suite 300
   San Diego, CA.  92123
4  Tel:  (858) 244-7600
   Fax: (858) 858 836-0318
5  Email: Stephanie.boone@pandf.us

6  *Attorney for Defendants*
7  *Patenaude & Felix, APC*
   *Credit Corp Solutions, Inc.*

8

9                 UNITED STATES DISTRICT COURT

10              SOUTHERN DISTRICT OF CALIFORNIA

11

12

13  JORGE ESCAMILLA AVINA,          Case No.:  3:20-cv-00166-BAS-MDD

14
                                    **DECLARATION OF RAYMOND A.**
15                                  **PATENAUDE IN SUPORT OF**
                Plaintiff,          **DEFENDANTS PATENAUDE &**
16                                  **FELIX AND CREDIT CORP**
    v.                              **SOLUTIONS' MOTION TO DISMISS**
17                                  **PLAINTIFF'S SECOND AMENDED**
                                    **COMPLAINT UNDER RULE**
18  PATENAUDE & FELIX, APC; CREDIT  **12(b)(6), AND IN THE**
    CORP SOLUTIONS, INC; THOMAS     **ALTERNATIVE SUMMARY**
19  FLYNN; SPECIALIZED ATTORNEY     **JUDGMENT UNDER RULE 56**
    SERVICES, INC,
20

21
                Defendants.
22                                  Judge:     Hon. Cynthia Bashant
                                    Court:     4B
23                                  Hearing:   June 21, 2021

24

25

26

27

28

                              1

I, Raymond A. Patenaude, declare as follows:

1.      I am an attorney duly admitted to practice law before the courts of the State of California and am the President, CEO and Manager of the Law Offices of Patenaude & Felix, APC ("P&F"), a law firm established in 1991 in San Diego, California. Our firm primarily practices in the area of financial litigation, representing national creditors in seven states.

2.      I make the following declaration in support of Defendants Patenaude & Felix and Credit Corp Solutions' Motion to Dismiss Plaintiff's Second Amended Complaint under Rule 12(b)(6), or in the Alternative Summary Judgment under Rule 56. I make this declaration based on my knowledge of the facts contained in this declaration, and if called as a witness, could and would testify competently to the following, except as to those matters testified to upon my information and belief, and as to those matters, I believe them to be true.

3.      P&F is a debt-collection law firm that has been in business twenty-nine (29) years, managed by its founding partner, Raymond A. Patenaude.

4.      CCS is a debt buyer who purchases outstanding consumer debt from original creditors.

5.      Pursuant to the FDCPA, Credit Corp Solutions, Inc. ("CCS") is a debt collector.  CCS acquires debts from first-party creditors and then attempts to collect on those debts.

6.      P&F entered into an agreement with CCS in which P&F agreed to provide legal services for CCS in the furtherance of collecting outstanding debts for CCS.

7.      CCS places accounts with P&F and P&F attempts to collect on the accounts through negotiations with the consumers and, at times, litigation.

8.      When attempts at negotiation are exhausted, P&F prepares for litigation against the consumer with the outstanding debt.  When litigation is initiated, P&F prepares the Summons and Complaint and uses an attorney services company to have the

court documents filed with the appropriate court and then subsequently served on the defendant consumer.

9. P&F entered into an agreement with Specialized Attorney Services, Inc. ("SAS") for SAS to file and serve court documents on behalf of P&F's clients.

10. Specialized Attorney Services, Inc. ("SAS") is an incorporated attorney services company that provides services such as filing and process service of legal documents on behalf of law firms.

11. Upon information and belief, SAS independently hires, trains, supervises, and assigns its own bonded and licensed process servers.

12. P&F does not have knowledge of whom SAS hires or assigns for the service of P&F court documents to defendants.

13. P&F does not control who SAS hires as process servers.

14. P&F does not control nor have knowledge of any business decision of SAS.

15. CCS does not control nor dictate who P&F retains for service of process.

16. CCS does not have knowledge of whom SAS hires or assigns for the service of P&F court documents to defendant consumer.

17. CCS does not control who SAS hires as process servers.

18. CCS does not control nor have knowledge of any business decision of SAS.

19. There is no communication between P&F and CCS with SAS regarding the process servers that SAS hires and then assigns for service.

20. At no point has P&F and CCS ever discussed or communicated in any fashion to SAS on whom SAS should hire or assign for P&F and or CCS litigation.

21. P&F and CCS do not have knowledge nor take part in any communication with the process servers that are hired by SAS and then subsequently assigned by SAS.

22. In fact, CCS is not involved in the litigation process at all. CCS provides P&F with account files that have outstanding balances. These account files contain information such as, the consumer's contact information, the amount that the consumer owes, the date the account was opened, the last date the consumer made payment, and

any other pertinent information that would aid in the collection of the debt.  Once litigation is required, CCS is not involved with the litigation process.

23.     When P&F initiates a new law suit against a defendant consumer, P&F conducts its due diligence and prepares the court documents such as the summons, complaint, and any other required documents.  Once prepared, P&F provides the court documents to SAS for filing and service.  Upon filing and service, SAS provides P&F with the conformed copy of the court documents and proof of service.

24.     Neither P&F nor CCS, have control or knowledge as to whom SAS assigns to be the process servers for the court documents that P&F provides SAS.

25.     Upon information and belief, SAS has its own internal system for assigning process servers for service of court documents to parties to the litigation.

26.     Plaintiff's assertion that P&F and CCS have control over the SAS process server is categorically false and not supported by any factual evidence or allegation.

27.     P&F and CCS do not control the times of day which SAS process servers attempt service of process.

28.     P&F and CCS do not control the number of attempts the SAS process servers attempt service of process.

29.     P&F and CCS do not control SAS process servers' speech.

30.     P&F and CCS do not control SAS process servers' mobile devices to report and prove GPS data consistent with the stated service address and time of each attempted service.

31.     P&F and CCS do not control whether or not SAS process servers take photos of the service address and or of the debtor defendant on each service attempt.

32.     P&F and CCS do not control SAS process servers to report demographic data of the persons served.

33.     P&F and CCS do not control which process server SAS assigns for service attempts.

34.     P&F and CCS have never mandated or otherwise requested SAS to assign Defendant Flynn or any other SAS employee, agent, or independent contractor for exclusive use.

35.     Upon information and belief, SAS hired Defendant Flynn as a process server.

36.     Flynn was the only party that drafted, completed, executed, and filed the affidavits of service in the State Court lawsuit against Plaintiff.

37.     P&F and CCS had never met nor had knowledge of Defendant Flynn's existence or relationship with SAS prior to this case.

38.     P&F and CCS have never hired Defendant Flynn in any capacity.

39.     P&F and CCS have never made payment to any SAS process servers.

40.     Upon information and belief, SAS is the only entity that makes payments to its process servers.

41.     Plaintiff never disputed the outstanding debt he allegedly owed to Synchrony Bank.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this declaration was executed in the City and County of San Diego on May 5, 2021.


    **/s/ Raymond A. Patenaude**

RAYMOND A. PATENAUDE
PRESIDENT AND CEO
PATENAUDE & FELIX, APC