1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

## SOUTHERN DISTRICT OF CALIFORNIA

10
11
12
13
14
15
16
17

| | |
|---|---|
| JORGE ESCAMILLA AVINA,<br><br>         Plaintiff,<br><br>  v.<br><br>PATENAUDE & FELIX, APC, *et al.*,<br><br>         Defendants. | Case No. 20-cv-0166-BAS-MDD<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PATENAUDE & FELIX, APC AND CREDITOR CORP. SOLUTIONS INC.'S MOTION TO DISMISS (ECF No. 38)** |

18
19
20
21
22
23

   Before this Court is Defendants Patenaude & Felix, APC ("P&F") and Credit Corp. Solutions, Inc. ("CCS" and, together with P&F, "Entity Defendants")'s motion to dismiss Plaintiff Jorge Avina ("Plaintiff")'s Second Amended Complaint ("SAC") pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) or, in the alternative, for summary judgment pursuant to Rule 56 ("Motion").  (Mot., ECF No. 38; Mem., Ex. 1 to Mot., ECF No. 38-1.)

24
25
26
27
28

   This Court previously held, *inter alia*, that Plaintiff's First Amended Complaint ("FAC") failed to state a claim against either Entity Defendant under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.* (FAC, ECF No. 9).  (Order, ECF No. 23.)  The Court granted Plaintiff leave to amend, which he did on April 7, 2021, when he filed his SAC.  (SAC, ECF No. 25.)  Entity Defendants aver that the SAC still is

deficient and, thus, must be dismissed.  Alternatively, Entity Defendants argue that the Court should issue summary judgment in their favor on the basis of a single declaration, unaccompanied by any supporting documentary or other evidence, proffered by P&F's President and Chief Executive Officer.  (*See* Declaration of Raymond A. Patenaude ("Patenaude Decl."), ECF No. 38-2.)  Plaintiff opposes (Opp'n, ECF No. 43) and Entity Defendants reply (Reply, ECF No. 46).

The Court finds the Motion suitable for determination on the papers submitted and without oral argument.  *See* Fed. R. Civ. P. 78(b); Civ. L.R. 7.1(d)(1).  For the reasons set forth below, the Court **GRANTS IN PART** and **DENIES IN PART** Entity Defendants' Motion.

## I.   BACKGROUND[1]

The Court incorporates the background section from its Order, dated March 9, 2021, and repeats those facts here only to the extent necessary to frame issues pertinent to the Motion before it.  (*See* Order.)

### A.   First Amended Complaint

Plaintiff commenced this putative class action on January 24, 2020.  He filed his FAC on April 14, 2020, alleging a single claim under the FDCPA against Defendant Thomas Flynn, Entity Defendants, and a Defendant under the fictitious name "DOE 1," which the FAC described as an "unknown individual or business entity engaged in the business of collecting defaulted consumer debt in [California]."  (FAC ¶¶ 10, 19.)

According to the FAC, this action stems from Plaintiff's alleged default in approximately 2016 on a consumer credit card account he held with Synchrony Bank.  (FAC ¶ 13.)  Synchrony Bank assigned that debt to CCS, which retained P&F, a debt-collection law firm, for collection purposes.  (*Id.* ¶¶ 13–14, 25.)  P&F subsequently filed a

---

[1] These facts are taken from the FAC and SAC.  For this Motion, the Court accepts all of Plaintiff's factual allegations as true.  *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

20cv0166

debt-collection lawsuit on behalf of CCS in San Diego Superior Court on June 11, 2019 ("State Action").  (*Id.* ¶ 14.)

The FAC alleged that Entity Defendants "hired" Flynn to serve the State Action complaint and summons upon Plaintiff, and that on July 12, 2019 "Flynn filed a proof of service with the [State Action] [C]ourt stating [he had] completed personal service upon Plaintiff at his residence . . . at 10:48 a.m. on July 1, 2019."  (*Id.* ¶¶14–15.)  Plaintiff annexed to the FAC as Exhibit 1 that first-filed proof of service.  (First Proof of Service, Ex. 1 to FAC, ECF No. 9-1.)  Plaintiff alleged, however, Flynn could not possibly have served him personally, for Plaintiff was at work, not at home, at the time Flynn attested he had completed personal service.  (FAC ¶ 16.)  Accordingly, Plaintiff moved to quash service and submitted a timecard of his in support thereof.  (*Id.*)  In response, Entity Defendants withdrew the First Proof of Service.

The FAC alleged that Entity Defendants "again hired Flynn to serve summons on Plaintiff" after his first attempt was voided.  (*Id.*)  The second-filed proof of service, which Plaintiff annexed to his FAC as Exhibit 2, was filed in the State Action on November 14, 2019.  (*Id.*; Second Proof of Service, Ex. 2 to FAC, ECF No. 9-2.)  Like the First Proof of Service, the Second contains a signed attestation from Flynn that he had personally served Plaintiff at his residence on November 9, 2019, at 2:12 p.m.  (FAC ¶ 16; Second Proof of Service 1.)  Yet Plaintiff again alleged that he "was not actually home at the time" Flynn affirmed he had completed service; he averred that his "mother found CCS' lawsuit lying on the front porch where Flynn knowingly dropped it."  (FAC ¶ 16.)  Rather than serve Plaintiff a third time, Entity Defendants voluntarily dismissed the State Action without prejudice on January 2, 2020.  (*Id.* ¶ 17.)

Based on these alleged events, the FAC asserted a single claim under the FDCPA against all Defendants.  The FAC alleged that each Defendant is a "debt collector" under the Act and that Defendants collectively violated several provisions of the FDCPA by "draft[ing], complet[ing], execut[ing], and fil[ing] false proofs of service" in the State Action.  (*Id.* ¶¶ 21–26 (alleging each Defendant is a "debt collector"); 27 (listing provisions

of FDCPA Defendants purportedly breached).)   Specifically, the FAC asserted that Defendants, collectively, had violated the following provisions of the FDCPA:

| | |
|---|---|
| 15 U.S.C. § 1692(d): | engaging in conduct the natural consequence of which is to harass the debtor in connection with the collection of a debt; |
| 15 U.S.C. § 1692(e): | using false, deceptive and misleading representations in connection with the collection of a debt; |
| 15 U.S.C. § 1692(e)(2): | falsely representing the legal status of the debt; |
| 15 U.S.C. § 1692(e)(10): | using false representations and deceptive means in an attempt to collect a debt; and |
| 15 U.S.C.§ 1692(f): | using unfair and unconscionable means in an attempt to collect a debt. |

(*Id.* ¶ 27.)

Notably, the FAC cabined essentially all of the allegations specific to Entity Defendants in a section entitled "Vicarious Liability." (*See id.* ¶¶ 29–35.)   In that section, the FAC alleged "Flynn was acting on behalf of and under the authority of [Entity Defendants]," and, thus, "was the[ir] agent" at all times pertinent hereto. (*Id.* ¶ 29.)   To support this assertion of agency, the FAC averred that Entity Defendants were, in essence, "willfully ignor[ant]" to the substantial likelihood Flynn would effectuate "sewer service."[2] (*Id.* ¶ 35, *see also id.* ¶¶ 29–34.)   Specifically, Plaintiff alleged that in initially retaining Flynn, Entity Defendants disregarded publicly-available data reflecting Flynn's "unrealistically high percentage" of lawsuits purportedly personally served on defendants

---

[2] "Sewer service" occurs when a defendant "fail[s] to serve a debtor and fil[es] a fraudulent affidavit attesting to service so that when the debtor later fails to appear in court, a default judgment can be entered against [him]." *Holmes v. Elec. Document Processing, Inc.*, 966 F. Supp. 2d 925, 929 (N.D. Cal. 2013).

20cv0166

in debt-collection cases, the equally high number of nonresponsive defendants who were supposedly personally served, and "inexplicable descriptions" of people allegedly personally served in his affidavits of service, and that, in re-retaining Flynn to effectuate service a second time, the Entity Defendants hired a known perjurer. (*Id.* ¶ 33.)

Additionally, the FAC alleged in support of an agency relationship that Entity Defendants' compensation structure, which paid Flynn only for completed service, incentivized Flynn's false affirmations of personal service. (*Id.* ¶¶ 33–34.) To illustrate the effect this compensation arrangement had on Flynn's performance, the FAC pointed again to Flynn's historical performance as Entity Defendants' process server as reflected by the data, which establishes that in the 170 debt-collection lawsuits Flynn had attempted service on behalf of Entity Defendants in 2019 alone, he purportedly served 66% by personal service and 0% by substitute service." (*Id.* ¶ 33.) Moreover, of the 112 debtors whom Flynn purportedly served personally, "only 3 answered suit," while the others "either defaulted or were subject to entry of judgment." (*Id.*)

Plaintiff purported to bring this action on behalf of himself and a class of all persons (1) residing in California; (2) against whom Defendants "jointly filed proofs of 'personal service' of process in San Diego County Superior Court of the State of California . . . in debt collection lawsuits in which the person was not personally served with process"; and (3) in an attempt to collect personal, family, or household debts, from January 24, 2019 to the date of class certification. (*Id.* ¶ 37.)

## B.  Motions to Dismiss the First Amended Complaint

On May 20, 2020, both Flynn and Entity Defendants, respectively, moved to dismiss the FAC. (ECF Nos. 16, 17.) Those motions raised overlapping arguments that Plaintiff lacked standing, sought to reach conduct protected under California's litigation privilege, and failed to allege class action claims. The Court denied those strands of Defendants' motions as either unavailing or premature. (Order 5–10, 21–22.)

Defendants also sought dismissal of the FAC for failure to state a claim: Flynn on the ground that the FAC failed to allege he is a "debt collector" and Entity Defendants on

the ground that the FAC failed to allege an FDCPA claim against them, either under a theory of direct or vicarious liability. The Court denied Flynn's motion but granted Entity Defendants' motion. (*See id.* 14–20.) It first found, based upon the FAC's format and the absence of specific allegations about Entity Defendants' own affirmative acts or omissions, that the FAC sought only to allege against Entity Defendants a vicarious claim predicated upon Flynn's purported FDCPA liability, not a direct claim. (*Id.* 14–16.) Turning next to the adequacy of Plaintiff's vicarious claim, the Court determined that the FAC's allegations fell short of demonstrating the existence of a principal-agent relationship between Entity Defendants and Flynn. (*Id.*)

In particular, this Court found that although the FAC's allegations that Entity Defendants (1) "exclusively use[d]" Flynn as a process server in debt-collection lawsuits; (2) retained Flynn to serve process even after it became clear Flynn had perjured himself; and (3) deployed financial incentives purportedly having the natural and intended effect of inducing Flynn to falsely affirm personal service showed "some degree of control," they did not render plausible a finding of agency. (Order 19.) The absence of facts showing Entity Defendants "exercised control over the specific actions taken by Flynn [that] give rise to the FDCPA violations in this case" felled Plaintiff's claim against them. (*Id.*)

Accordingly, the Court dismissed without prejudice the action as to Entity Defendants, and granted Plaintiff leave to file an amended pleading. (*Id.* 22.)

### C.    Second Amended Complaint

Consistent with this Court's Order, Plaintiff filed the SAC on April 7, 2021.[3] The Court observes the SAC differs from the FAC in the following aspects that bear upon the present Motion.

---

[3] On December 8, 2021, the Court observed Plaintiff has failed to comply with Civ. L.R. 15.1(c), which requires Plaintiff to show through redlining or other similarly effective typographical method how the FAC differs from the SAC. Consequently, the Court ordered Plaintiff to remediate this deficiency. (*See* ECF No. 50.) In response, Plaintiff filed a Notice attaching a second non-compliant document. (*See* ECF No. 51.) Notwithstanding Plaintiff's failure to abide by Civ. L.R. 15.1(c), the Court has reviewed the SAC, compared it to the FAC, and developed a firm grasp on the distinctions between the two. Plaintiff

20cv0166

First, the SAC replaces unnamed Defendant DOE 1 with named Defendant Specialized Attorney Services, Inc. ("SAS").  (SAC ¶ 9.)  The SAC alleges that Entity Defendants "hired SAS to serve the summons and complaint upon Plaintiff" in the State Action, which, in turn, twice "assigned and/or delegated that service of process task to Flynn."  (*Id.* ¶ 14.)  According to the SAC, Flynn was an SAS employee at the times pertinent thereto.  (*See* SAC ¶¶ 14, 27 (alleging "SAS "employed process servers like Flynn") (internal quotation marks omitted).)  Furthermore, the SAC alleges that SAS assigned to Flynn, and prohibited him from transferring, his service jobs and, moreover, provided Flynn with the means to perform his service-of-process tasks, including providing Flynn with SAS's software and template proofs of service.  (*Id.* ¶¶ 31–32.)  The SAC also alleges that Entity Defendants "controlled SAS because it dictated to SAS "which of [SAS]'s process servers it preferred to use and . . . exclusively used Flynn to serve CCS' lawsuits," such as the State Action, and exercised authority to audit SAS's performance. (*Id.* ¶¶ 41, 49.)

Second, the SAC seeks to supplement the FAC's vicarious-liability allegations by inserting into the pleading numerous averments concerning the degree of control Entity Defendants exerted over Flynn.  Specifically, the SAC alleges:

> At all times [Entity Defendants] controlled the times of day during which Flynn could attempt service of process upon debtor defendants like Plaintiff (*e.g.*, only between the times of 8 a.m. and 9 p.m.).  [Entity Defendants] controlled the places where Flynn could attempt service (e.g., residences) versus the places where Flynn was prohibited by Patenaude from attempting service (e.g., places of employment).  [Entity Defendants] controlled whether Flynn had to make further service attempts at an address that Flynn reported as invalid, and [Entity Defendants] controlled whether Flynn had to effect substitute service at an address that Flynn had already reported as invalid, commonly referred to in the industry as a "serve regardless" instruction. [Entity Defendants] controlled what Flynn could say to a debtor defendant when attempting service; that is, [Entity Defendants] prohibited Flynn from discussing the lawsuit with the debtor defendant or the

is encouraged to review the local civil rules of this district carefully and warned that, going forward, failure to comply therewith may result in denial of the relief sought.

20cv0166

debtor defendant's co-occupants.  [Entity Defendant] controlled Flynn to the extent that [Entity Defendants] prohibited Flynn from disclosing to anyone that Flynn was attempting to serve the debtor defendant in relation to a debt. [Entity Defendants] controlled Flynn to the extent that [Entity Defendants] required Flynn and/or Flynn's mobile device to report and prove GPS data consistent with the stated service address and time of each attempted service. Entity Defendants controlled Flynn to the extent that [Entity Defendants] required Flynn to take photos of the service address and/or of the debtor defendant on each service attempt.  [Entity Defendants] controlled Flynn to the extent that [Entity Defendants] required Flynn to report the demographic data of the person served . . . .  Flynn's . . . proofs of service were at all times subject to the control of [Entity Defendants] who had a right to inspect and review the proofs before filing with the court.

(SAC ¶¶ 38, 46.)  The SAC further alleges that Entity Defendants retained the right to "audit both Flynn's individual service attempts and batches of Flynn's service attempts to detect potential inaccuracies." (*See id.* ¶¶ 43, 51.)

Finally, the SAC has been reformatted and supplemented to include facts elucidating that Plaintiff, indeed, seeks to hold Entity Defendants both vicariously *and* directly liable. In particular, the allegations specific to Entity Defendants no longer are cabined under a section entitled "Vicarious Liability."  That descriptive title has been omitted from the SAC.  Now, allegations specific to each defendant are lodged separately, without explicit reference to a particular theory of liability.  (*See id.* ¶¶ 30–56.)  Furthermore, the SAC appears to allege a direct claim under the FDCPA against Entity Defendants on the basis that Entity Defendants, not Flynn, "fil[ed] with the [State Action Court]" the Proofs of Service containing Flynn's false affirmations and an endorsement of the accuracy of those Proofs of Service, despite publicly-available data showing "Flynn was a serial perjurer," which Entity Defendants allegedly "either failed to review" or "willfully ignored." (*Id.* ¶¶42, 50.)

On May 7, 2021, Entity Defendants moved a second time to dismiss this action for failure to state a claim under Rule 12(b)(6).  (Mot.)  They also moved in the alternative for

summary judgment under Rule 56.  In connection with its Motion, Entity Defendants submit for the Court's consideration the Patenaude Declaration.  (*Id.*; Patenaude Decl.)[4]

The Patenaude Declaration alleges that P&F entered into an agreement with SAS "to file and serve documents on behalf of P&F's clients," including CCS.  According to the Patenaude Declaration, Entity Defendants lacked control over which process servers SAS hired or assigned a specific task.  (Patenaude Decl. ¶¶ 9–21.)  The Patenaude Declaration further declares that "CCS is not involved in the litigation process at all," and that it simply "provides P&F with account files that have outstanding balances," which P&F is tasked with collecting.  (*Id.* ¶¶ 22–23.)  It alleges Plaintiff's assertion in his Complaint that Entity Defendants "have control over the SAS process server is categorically false and not supported by any factual evidence or allegation."  (*Id.* ¶ 26.)

## II.   LEGAL STANDARD

### A.   Rule 12(b)(6)

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint.  *See Navarro v. Block*, 250 F.3d 729, 731 (9th Cir. 2001).  The Court must construe all factual allegations pleaded in the complaint as true and must draw all reasonable inferences therefrom in favor of the nonmoving party.  *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996).  To avoid a Rule 12(b)(6) dismissal, a complaint need not contain detailed factual allegations, rather, it must plead "enough facts to state a claim for relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  "Where a complaint pleads facts that are 'merely consistent with' a

---

[4] SAS also moved to dismiss on statute-of-limitation grounds.  (*Id.*)  Plaintiff responded that it would not oppose SAS's motion (ECF No. 46) and the Court consequently granted that motion on August 30, 2021.  (ECF No. 48.)  Thus, SAS is no longer a defendant in this action.

defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

"[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief requires more than labels and conclusions and a mere formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (alteration in original)). A court need not accept "legal conclusions" as true. *Iqbal*, 556 U.S. at 678. Despite the dereference the court must pay to plaintiff's allegations, it is not proper for the court to assume that "the [plaintiff] can prove facts that [he or she] has not alleged or that defendant[] ha[s] violated . . . the laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc., v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

## B. Rule 12(d)

Ordinarily, on a Rule 12(b)(6) motion, a court may review only the allegations in the complaint and any documents attached or incorporated by reference to the complaint. *See Koala v. Khosla*, 931 F.3d 887, 894 (9th Cir. 2019) (citing *United States v. Ritchie*, 342 F.3d 903, 907–08 (9th Cir. 2003)). However, under Rule 12(d),

> [i]f, on a motion under Rule 12(b)(6) . . ., matters outside the pleading are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all material that is pertinent to the motion.

Fed. R. Civ. P. 12(d).

Conversion under Rule 12(d) is left entirely to the district court's discretion. *See Sundby v. Marque Funding Grp., Inc.*, No. 3:19-CV-0390-GPC-AHG, 2020 WL 434487, at *2 (S.D. Cal. Jan. 28, 2020) (quoting *Adobe Sys. Inc. v. Blue Source Grp., Inc.*, 125 F. Supp. 3d 945, 968 (N.D. Cal. 2015)); *Young v. City of Visalia*, 687 F. Supp. 2d 1141, 1150 (E.D. Cal. 2009). Conversion of a Rule 12(b)(6) motion to a Rule 56 motion "should be exercised with great caution." 5 C. Wright & A. Miller, Federal Practice & Procedure § 1366 (2018 3d ed.) (citing, *inter alia*, *United States v. 25445 Via Donna Christa*, 138 F.3d

403 (9th Cir. 1998), *amended on other grounds*, 170 F.3d 1161 (1999)).   In exercising its discretion to transform a Rule 12(b)(6) motion into a Rule 56 one, a district court must consider whether "all parties [have] be[en] given a reasonable opportunity to present all material that is pertinent to the motion."   Fed. R. Civ. P. 12(d).   "If the district court chooses 'to ignore supplementary materials submitted with the motion papers and determine the motion under the Rule 12(b)(6) standard, no conversion occurs and the supplementary materials do not become part of the record for purposes of the Rule 12(b)(6) motion.'"   *Young*, 687 F. Supp. 2d at 1150 (citing, *inter alia*, *Trans-Spec Truck Serv. v. Caterpillar Inc.*, 524 F.3d 315, 321 (1st Cir. 2008) and *Campos v. New Direction Equip. Co.*, No. 2:08-CV-0286-LRH-RJJ, 2009 WL 962219, at *1 (D. Nev. Apr. 6, 2009)).

## III.   ANALYSIS

The Court first determines by which standard to adjudge the present Motion. Finding application of Rule 12(b)(6) appropriate, the Court next assesses the sufficiency of Plaintiff's FDCPA claim against Entity Defendants, under both direct and vicarious legal theories.   For the reasons stated below, this Court finds that, at this stage, Plaintiff adequately alleges a direct claim against P&F only, predicated upon P&F's filing of invalid proofs of service in the State Action, and a vicarious claim against both Entity Defendants arising out of Flynn's purported violations of the FDCPA.

### A.   Declination to Convert to Rule 56 Motion

"As the language of [Rule 12(d)] suggests, federal courts *have complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in connection with a Rule 12(b)(6) motion . . . .*"   *Young*, 687 F. Supp. 2d at 1150 (quoting Wright, *et al.*, *Federal Practice & Procedure* § 1366 (emphasis and alteration in original).   Thus, it matters not that Entity Defendants style their Motion as one requesting summary judgment under Rule 56 as an alternative to their motion to dismiss under Rule 12(b)(6).   *See id.* ("[A] district court is not obligated to convert a 12(b)(6) motion to one for summary judgment in every case in which a defendant seeks to rely on matters outside the complaint" (quoting *United States v. Inter. Longshoremen's Ass'n*, 518

- 11 -

F. Supp. 2d 422, 451 (E.D.N.Y. 2007))).   Nor does Plaintiff's mere "objection" to the Court's consideration of external evidence bear upon the propriety of conversion.  *See Blair v. Medtronic Inc.*, No. 3:15-CV-01678-SC, 2015 WL 5728050, at *2–3 (N.D. Cal. Sept. 30, 2015) ("[A] Court may *sua sponte* convert a Rule 12(d)(6) motion to dismiss a Rule 56 motion for summary judgment if matters outside the pleadings are presented to and not excluded by the court.").

Rather, this Court must determine whether "all parties" have been "given a reasonable opportunity to present all material that is pertinent to the motion." Fed. R. Civ. P. 12(d).  Entity Defendants have proffered a simple declaration of P&F's President and Chief Executive Officer that, at its core, contests the SAC's allegations that there existed an agency relationship between either Entity Defendant, on the one hand, and Flynn, on the other hand.  (*See* Patenaude Decl. ¶¶ 9–22.)  The Patenaude Declaration does not contain any documentary or other supporting evidence.   Put differently, the Entity Defendants seek to give evidentiary weight, through the bare attestations of P&F's principal, to its denials of the factual allegations in the SAC underlying the purported principal-agency relationship between themselves and Flynn.  They do so before discovery in this proceeding has commenced.  Indeed, no deadlines have been set as to fact- or expert-discovery, thus, indicating discovery in this proceeding is in its infancy.

Consequently, the Court finds that the circumstances presented here—where a party submits a simple declaration alongside its Rule 12(b)(6) motion prior to the commencement of discovery—are paradigmatic of those in which courts in this Circuit and elsewhere have exercised their discretion to decline conversion under Rule 12(d). *See Barnes v. Sea Hawai'i Rafting, LLC*, 493 F. Supp. 3d 972, 977 (D. Haw. 2020) (finding defendant's submission of a "simple declaration" to support its motion to dismiss, when discovery had just begun, constituted "minimal, incomplete, and unnecessary" evidence, and, thus, declining to convert under Rule 12(d)); *Young*, 687 F. Supp. 2d at 1143 (declining to consider defendant's declaration and plaintiff's responsive affirmation, both submitted without supporting documentary evidence); *Grillo v. John Alden Life Ins. Co.*,

939 F. Supp. 685, 686 (D. Minn. 1996) (declining defendant's request for summary judgment in the alternative where it submitted a simple affidavit and plaintiff a responsive affidavit, finding "the parties are in no position to present all material pertinent to a motion for summary judgment"); *Johnson v. Mobile Cty. Sheriff Dep't*, No. Civ. 06-cv-0821-WS-B, 2007 WL 2023488, at *2 (S.D. Ala. July 9, 2007) ("At this time, it would be inappropriate to perform such conversion, in as much as this action is in its infancy and the parties are ill-equipped at this stage of the proceedings to present all the evidence that would be required for a proper Rule 56 review."); *accord Melo v. Hafer*, 912 F.2d 628, 634 (3d Cir. 1990) (summary judgment standard not followed in absence of "complete factual record developed during a defined discovery period"). Simply put, Rule 12(d) conversion here would lead to a decision on summary judgment before "all material that is pertinent to that motion" has been presented to the Court. *See* Fed. R. Civ. P. 12(d).

Accordingly, the Rule 12(b)(6) standard governs this Motion, and the Court will not consider extrinsic evidence, including the Patenaude Declaration. Thus, the Court is tasked with assessing the sufficiency of the allegations that Entity Defendants directly and vicariously, through Flynn, violated the FDCPA.

### B. Direct FDCPA Claim

Entity Defendants launch two arguments to contest Plaintiff's assertion they directly violated the FDCPA, neither of which is availing. First, Entity Defendants contend that Plaintiff first introduced his theory of direct liability in his Opposition, and that the facts which form that theory's premise are absent from the SAC. (Reply 3–4 (citing Opp'n 2–3).) The Court disagrees with Plaintiff's characterization. As explained above, the SAC has been supplemented with allegations that Entity Defendants are directly liable under the FDCPA for their role in filing the invalid Proofs of Service. It also has been modified to disentangle the legal theory of direct liability from Plaintiff's vicarious claim against Entity Defendants. (*See supra* Sec. I.C.)

Second, Entity Defendants argue that Plaintiff never obtained this Court's leave to include a direct claim against them in the SAC. While it is true that the Court's grant of

leave to amend in its Order was limited in scope, *see DeLeon v. Wells Fargo Bank, N.A.* No. 10-CV-01390-LHK, 2010 WL 4285006, at *3 (N.D. Cal. Oct. 22, 2010) ("Where an order of dismissal grants leave to amend without limitation, California district courts generally allow new claims and parties to be submitted in an amended complaint, but where the granting of leave to amend was limited in scope, parties are generally required to seek leave of Court to add new claims [and theories]"), the Court finds that the direct-claim allegations in the SAC fall within the ambit of the Court's Order.   (*See* Order 22.) Specifically, the Order granted Plaintiff leave to amend his operative complaint to address the multiple "pleading *deficiencies*" noted in the Order (*id.*), among which was the Court's conclusion that the FAC did not "allege that [Entity Defendants] affirmatively acted" in violation of the FDCPA and that the format of the FAC supported that finding (*id.* 15–16).

Consequently, the Court declines Entity Defendants' invitation to dispose summarily of Plaintiff's direct FDCPA claim.

Nonetheless, the Court still must assess the adequacy of the SAC's direct-liability allegations.  "The FDCPA is a strict liability statute that 'makes debt collectors liable for violations that are not knowing or intentional.'"  *Donahue v. Quick Collect, Inc.*, 592 F.3d 1027, 1030 (9th Cir. 2010) (quoting *Reichert v. Nat'l Credit Sys. Inc.*, 531 F.3d 1002, 1005 (9th Cir. 2008)).  To establish a direct claim under the FDCPA, "a plaintiff must show that: (1) plaintiff is a consumer; (2) plaintiff has been the object of collection activity arising from a consumer 'debt' within the meaning of the FDCPA; (3) defendant is a 'debt collector' as defined by the FDCPA; and (4) defendant has engaged in an act or omission in violation of the prohibitions or requirements of the FDCPA."  *Miranda v. Law Office of D. Scott Carruthers*, No. 1:10-CV-01487-OWW, 2011 WL 2037556, at *4 (E.D. Cal. May 23, 2011) (citing *Turner v. Cook*, 362 F.3d 1219, 1227–28 (9th Cir. 2004)).

The Motion does not dispute that Plaintiff satisfies three of the four elements of an FDCPA claim:  Plaintiff is a consumer, he was the object of collection activity arising from a consumer credit card debt, and Defendants are all debt collectors.  (Mem. 8–9.)  Thus, the lone dispute is whether the SAC adequately alleges Entity Defendants "engaged in an

act or omission in violation of the prohibitions or requirements of the FDCPA." *See Miranda*, 2011 WL 2037556, at \*4.

The FDCPA's protections "reasonably extend to prevent debt collectors from carelessly and improperly serving consumers and then obtaining default judgments against them." *See Mirshafiei v. Legal Recovery Law Offices, Inc.*, No. SACV 15-00873-CJC (DFMx), 2016 WL 11464745, at \*4–5 (C.D. Cal. Oct. 5, 2016). Because the affirmative act of filing an invalid proof of service is an integral part of obtaining a default judgment and, thus, successfully executing sewer service, this Court joins others in concluding a debtor-plaintiff can maintain a direct claim under the FDCPA against a debt collector's attorney "directly involved in the fil[ing] of [invalid] proofs of service."[5] *See Long v. Nationwide legal File & Serve, Inc.*, No. 12-CV-03578-LHK, 2013 WL 5219053, at \*5 (N.D. Cal. Sept. 17, 2013); *Mirshafiei*, 2016 WL 11464745, at \*5. The act of "sewer service" is actually composed of two necessary and separate acts: (1) "fail[ure] to serve a debtor" in a debt-collection action and (2) then "file[ing] a fraudulent affidavit attesting to service." *Holmes*, 966 F. Supp. 2d at 929. When these two acts are performed in conjunction with one another, it enables a creditor to wrongly obtain a default judgment against the debtor based on his or her understandable failure to appear in court. Thus, to sustain an FDCPA claim at the pleading stage, it is sufficient that a plaintiff alleges defendant's direct involvement in filing an invalid proof of service in a debt-collection action.

This Court finds the SAC's allegations sufficient to maintain a direct claim that P&F violated Section 1692e of the FDCPA. *See Mirshafiei*, 2016 WL 11464745, at \*4–5 (holding plaintiff adequately stated a direct, as opposed to vicarious claim, against defendant law firm where plaintiff alleged the law firm had filed invalid proofs of service

---

[5] A plaintiff may maintain such a claim regardless of the defendant's knowledge that the proofs of service were, in fact, invalid. *Mirshafiei*, 2016 WL 11464745, at \*5 (rejecting defendant's argument it "was unaware" it sent process server to wrong address to serve plaintiff as "[t]he FDCPA does not require knowledge [since] it is a strict liability statute" (citing *Donohue*, 592 F.3d at 1030).

containing allegedly fraudulent affirmations of the process server). As opposed to in the FAC, where Plaintiff alleged Flynn "filed" the Proofs of Service (FAC ¶ 14), in the SAC Plaintiff alleges P&F filed in the State Action (1) the Proofs of Service containing Flynn's purportedly fraudulent statements concerning his personal service of Plaintiff and (2) endorsements, on firm letterhead, of the accuracy and honesty of Flynn's affirmations in the Proofs of Service, without vetting and performing due diligence of Flynn's attestations, in violation of several of the FDCPA's provisions (SAC ¶¶ 27, 42–44; 50–52). These allegations are sufficient to draw a reasonable inference P&F was directly involved in court filings that give rise to FDCPA violations alleged. (*See id.* ¶ 27.)

In contrast, the SAC does not allege any facts specific to CCS that show direct involvement in the subject filing. Indeed, the SAC acknowledges that CCS "filed" the Proofs of Service in the State Action only "through its agent [P&F]." (SAC ¶ 50.) Plaintiff clearly seeks to impute to P&F's client, CCS, P&F's direct liability arising out of its court filings in the State Action. Such a legal theory is plainly vicarious, not direct. *Fox v. Citicorp Credit Servs., Inc.,* 15 F.3d 1507 (9th Cir. 1994) (debt collection company could be held vicariously liable for the conduct of their attorney where both were considered debt collectors under the FDCPA); *Police v. Nat'l Tax Funding, L.P.*, 225 F.3d 379, 404 (3d Cir. 2000) (vicarious liability under the FDCPA will be imposed for an attorney's misconduct if the client is itself a debt collector as defined in the statute); *see also Mirshafiei*, 2016 WL 11464745, at *5 (imposing direct liability upon law firm, not client-creditor).

Consequently, the Court denies Entity Defendants' Motion to the extent it seeks dismissal of Plaintiff's direct FDCPA claim against P&F but grants the strand of that Motion seeking dismissal of the direct FDCPA claim against CCS.

*       *       *

Having concluded Plaintiff fails to state a direct FDCPA claim against CCS, the Court must determine whether Plaintiff should be given a fourth opportunity to state such

1  a claim.  The Court concludes he should not, and, thus, dismisses the direct FDCPA claim
2  against CCS with prejudice.

3       Generally, leave to amend "shall be freely given when justice so requires."  Fed. R.
4  Civ. P. 15(a).  In considering whether leave to amend should be granted, courts consider:
5  bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether
6  the party has previously amended his pleadings.  *W. Shoshone Nat'l Council v. Molini*, 951
7  F.2d 200, 204 (9th Cir. 1991), *cert denied*, 506 U.S. 822 (1992).  Here, the Court finds that
8  granting Plaintiff leave to amend would be nothing more than an exercise in futility.  *See*
9  *Bonin v. Calderon*, 59 F.3d 815, 844–46 (9th Cir. 1995) (holding futility by itself can
10 justify the denial of a motion for leave to amend (citing *Outdoor Sys., Inc. v. City of Mesa*,
11 997 F.2d 604, 614 (9th Cir. 1993)).  Plaintiff has had three opportunities to allege a direct
12 FDCPA claim against CCS but has failed each time; the Court is convinced that there is no
13 new set of facts Plaintiff could present in an amended pleading to correct this deficiency.
14 *Allen v. City of Beverly Hills*, 911 F.2d 367, 374 (9th Cir. 1990) (holding district court did
15 not abuse discretion in denying leave to amend where movant presented only new legal
16 theories, not new facts).  Accordingly, this Court dismisses the direct FDCPA claim against
17 CCS without leave to amend.

18      **C.   Vicarious FDCPA Claim**

19      A plaintiff may sustain an FDCPA claim vicariously against a "debt collector" by
20 imputing to that defendant the complained-of "activities to those it enlists to collect debts
21 on its behalf."  *Freeman v. ABC Legal Servs. Inc.*, 827 F. Supp. 2d 1065, 1076 (N.D. Cal.
22 2011) (citing *Pollice*, 225 F.3d at 404 (3d Cir. 2000)).  A defendant is vicariously liable for
23 violations of the FDCPA where federal common law principles of agency would impose
24 it.  *McAdory v. M.N.S. & Assocs., LLC*, 952 F.3d 1089, 1096–97 (9th Cir. 2020) (citing
25 *Clark v. Capital Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1173 (9th Cir. 2006)).
26 The Ninth Circuit looks towards the Restatement (Third) of Agency ("Restatement") for
27 federal common law agency principles.  *Henderson v. United Student Aid Funds, Inc.*, 918
28 F.3d 1068, 1072–73 (9th Cir. 2019); *Jones v. Royal Admin. Servs., Inc.*, 887 F.3d 443, 448

(9th Cir. 2018); *Mavrix Photographs, LLC v. LiveJournal, Inc.*, 873 F.3d 1045, 1054 (9th Cir. 2017).

In determining whether vicarious liability applies, courts first analyze whether an agency relationship exists, and then decipher whether the acts of the agent may be attributed to the principal such that it has legal consequence.  *See* Restatement § 1.01 cmt. c ("Only interactions that are within the scope of an agency relationship affect the principal's legal positions."); *see McAdory v. M.N.S. & Assocs., LLC*, No. 3:17-CV-0777-HZ, 2021 WL 2321634, at *6–12 (D. Or. June 7, 2021) (holding agency relationship alone is insufficient to establish vicarious liability and that authority or ratification of the agent's acts is required).

### 1.   Agency Relationship

"Agency is the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act."  Restatement § 1.01.  Generally speaking, "[w]hether an agency relationship exists is for a court to decide based on an assessment of the relationship and not based on how the parties define their relationship."  *Henderson*, 918 F.3d at 1073.  At this stage, "the precise details of the relationship need not be pleaded," however, "sufficient facts must be offered to support a reasonable inference that an agency relationship existed." *Ewing v. Freedom Forever LLC*, No. 20-cv-880-JLS (AHG), 2021 WL 1087100, at *3 (S.D. Cal. Mar. 22, 2021) (quoting *Kristensen v. Credit Payment Servs.*, 12 F. Supp. 3d 1292, 1301 (D. Nev. 2014)); *J&J Sports Prods., Inc. v. Bear*, No. 1:12-CV-01509-AWI-SKO, 2013 WL 708490, at * 4 (E.D. Cal. Feb. 26, 2013) (instructing "[w]hether an agency relationship exists . . . is both an issue of fact and law that [generally] should not be decided at the pleadings stage.").

"For an agency relationship to exist, an agent must have authority to act on behalf of the principal and '[t]he [principal] [must have] a right to control the actions of the agent." *Mavrix Photographs, LLC*, 873 F.3d at 1054 (quoting Restatement § 1.01 cmt. c); *Jones*,

887 F.3d at 450 (holding that "[i]n determining whether vicarious liability may be imposed, the 'extent of control exercised by the [principal]' is the 'essential ingredient'" (quoting *United States v. Bonds*, 608 F.3d 495, 504 (9th Cir. 2010) (alterations in original))). [6]

The Court need not find that the principal "actually control[s] [the] agent as a prerequisite for establishing a[n] [agency] relationship, rather the principal need only have 'a right to control the actions of the agent.'" *McAdory*, 2021 WL 2321634, at *7 (citing Restatement § 1.01 cmt. c).   "A principal's right to control the agent is a constant across relationships of agency, but the content or specific meaning of that right varies." Restatement § 1.01 cmt. c; *id.* § 1.01 cmt. d ("A relationship of agency is not present unless the person on whose behalf [the] action is taken has the right to control the actor.").   "A person may be an agent although the principal lacks the right to control the full range of the agent's activities, how the agent uses time, or the agent's exercise of professional judgment." *Id.* § 1.01 cmt. c.   "The Restatement's general 'control or right to control' requirement looks to the overall purpose of the agency relationship—here the collection of debts." *McAdory*, 2021 WL 2321634, at *7.

"Control is a concept that embraces a wide spectrum of meanings, but within any relationship of agency the principal initially states what the agent shall and shall not do, in specific or general terms."   Restatement § 1.01 cmt. f(1).   "[C]ontrol assumes that the principal is capable of providing instructions to the agent and of terminating the agent's authority." *Id.* § 1.01 cmt. c.   Indeed, principals "often retain agents to perform specific services." *Id.*   Additionally, control also may be inferred from a principal's authority to give interim instructions. *See McAdory*, 2021 WL 2321634, at *8.   "The power to give interim instructions distinguishes principals in agency relationships from those who contract to receive services provided by persons who are not agents." Restatement § 1.01

---

[6] Entity Defendants do not dispute that the SAC contains enough factual allegations for the Court to reasonably infer that there was a manifestation by Entity Defendants that Flynn would act on their behalf to collect CCS's debts by effecting service upon Plaintiff and that Flynn consented to do so.  Thus, the "right to control" is the lone element of agency for the Court to determine at this pleading stage.

cmt. f(1).  Furthermore, "[t]he principal's right to control presupposes that the principal retains the capacity throughout the relationship to assess the agent's performance." Restatement § 1.01 cmt. f(1); *see McAdory*, 2021 WL 2321634, at *8 (considering allegation that purported principal "reserved the right to audit" its debt collector's activities, including "its compliance with applicable regulations and statutes" as relevant to the control analysis).  So too "may a principal exercise control over an agent's actions" through its "[i]ncentive structures that reward the agent for achieving results."  Restatement § 1.01 cmt. f(1).

The Court finds that the SAC alleges Entity Defendants controlled Flynn's service-of-process activities in each of the above-mentioned aspects.  With respect to Entity Defendants' right to instruct, the SAC alleges Entity Defendants:  retained SAS to serve Plaintiff with the State Action complaint and summons; mandated that that task be carried out by Flynn[7]; directed Flynn where, when, and how he could effectuate service of CCS' debt-collection lawsuits; instructed Flynn with whom he was authorized to speak and what he was authorized to say while attempting to effectuate service; and required Flynn to take pictures, implement GPS-tracking, and complete descriptive reports in order to corroborate the truthfulness of his affidavits of service.  (SAC ¶¶ 14, 38, 46.)  The SAC also alleges Entity Defendants had the right to issue interim instructions, particularly by "control[ing] whether Flynn had to effect substitute service" if his first attempt at personal service was unsuccessful.  (*Id.* ¶¶ 38, 46.)

Entity Defendants argue that the Court should not infer control from these allegations because they establish only that Entity Defendants required Flynn to execute service in compliance with the FDCPA's service-of-process provisions, which prohibit "debt collector[s] from communicating with consumers in connection with the collection of any debt" (1) before 8 a.m. and after 9 p.m. and (2) at the debtors "place of employment."

---

[7] The SAC's allegation that Flynn effectuated service on behalf of Entity Defendants in 170 lawsuits in 2019 alone renders plausible Plaintiff's assertion Flynn was Entity Defendants' exclusive process server.  (*See* SAC ¶ 40.)

(Mem. 19–20 (citing 15 U.S.C. 1692(a)).)  Entity Defendants aver that "[u]sing Plaintiff's rationale, . . . Flynn also has an agency relationship with Congress, since Congress wrote the [FDCPA] and 'controls' how communications in connection with debt collections must be made."  (*Id.* 19.)  While this is a novel and creative argument, it is unavailing.  One way in which a principal exerts control over an agent is by "set[ting] standards . . . for acceptable service quality."  Restatement § 1.01 cmt. f(1).  In this case, the fact that Entity Defendants gave instructions to Flynn—even if those instructions were merely to comply with the FCPA—constitutes one data point supporting Entity Defendants' control over Flynn.

In addition to alleging the authority to instruct Flynn, the SAC alleges Entity Defendants exercised control through both their ability to audit Flynn's performance and the incentive structure embedded in their relationship.  According to Plaintiff, Entity Defendants could "audit both Flynn's individual service attempts and batches of Flynn's service attempts to detect potential inaccuracies." (*See* SAC ¶¶ 43, 51.)  Plaintiff further alleges Flynn was incentivized to attempt personal service on the first attempt and, moreover, to fraudulently report he had successfully completed personal service at that time, because Entity Defendants "paid Flynn only for completed service and not for each service attempt."  (*Id.* ¶¶ 45, 53.)

Despite the Entity Defendants' attempt to distinguish it (Opp'n 19), the Court finds this case sufficiently similar to *Freeman v. ABC Legal Servs. Inc.*, 827 F. Supp. 2d 1065 (N.D. Cal. 2011).  Although some facts ultimately differ, the key factors—namely, a showing of control through allegations that defendant (1) chose the process server's assignments;  (2) restricted the substitution or assignment of the process server's performance or assigned tasks; and, most of all, (3) controlled the place, time, and manner of the service-of-process tasks—are the same.  *Id.* at 1076.  The Court also finds significant that the SAC alleges Entity Defendants controlled Flynn in ways beyond those which were alleged in *Freeman*.  (*See*, *e.g.*, SAC ¶¶ 43 (alleging Entity Defendants had right to, and in fact could, audit Flynn), 45 (alleging Entity Defendants' compensation structure amounted

20cv0166

to degree of control).  Thus, the Court gives little weight to differences Entity Defendants draw between the complaint in *Freeman* and the SAC here.

Citing *McNall v. Credit Bureau of Josephine Cty.*, 689 F. Supp. 2d 1265 (D. Or. 2010), Entity Defendants further argue that Plaintiff's vicarious FDCPA claim must be dismissed because he "does not provide any evidence" that Entity Defendants "ever communicated with, hired, instructed, supervised, or paid Flynn." (Mem. 14.)  However, it is not necessary at this stage for Plaintiff to present evidence, let alone detailed allegations, of agency.  *See Ewing*, 2021 WL 1087100, at *3.  "Arguments as to whether the evidence supports the allegations are more appropriately considered in a motion for summary judgment," which the present Motion is not.  *Gilbert v. Concentra Health Servs., Inc.*, No. 3:07-CV-00264-LRH-VPC, 2008 WL 318356, at *2 (D. Nev. Jan. 31, 2008).

Accordingly, the SAC contains sufficient factual content for the Court to reasonably infer Entity Defendants and Flynn were in a principal-agent relationship.

### 2. Attachment of Vicarious Liability

"Although a principal's degree of control over a specific activity is relevant to finding an agency relationship, a principal's control alone is insufficient to establish vicarious liability." *McAdory*, 2021 WL 2321634, at *9 (citing *Jones*, 887 F.3d at 449). "Rather, a principal is vicariously liable to a third-party for its agent's violative conduct where the agent acts with authority or the principal ratified the agent's acts." *Id.* "The legal consequences of an agent's actions may be attributed to a principal" under a broad range of agency principles. *Jones*, 887 F.3d at 449–50 (quoting *Salyers v. Metro. Life Ins. Co.*, 871 F.3d 934, 939 (9th Cir. 2017)).  "These various theories correspond with the bedrock theories of agency:  actual authority [(express or implied)], apparent authority, ratification, and employment (*respondeat superior*)." *Id.* at 450; *see* Restatement §§ 7.04 (agent acts with actual authority or the principal ratifies conduct); 7.07 (agent is an employee and commits a tort while acting in the scope of employment); 7.08 (agent commits a tort when acting with apparent authority in its dealings with a third party purportedly on behalf of the principal).

As best the Court can tell from its review of the SAC, Plaintiff advances two agency principles he believes renders Entity Defendants liable for Flynn's alleged FDCPA violations—implied actual authority and ratification.[8]

### a.     Implied Actual Authority

"The legal consequences of an agent's actions may be attributed to a principal when the agent has actual authority (express or implied)[.]" *Salyers*, 871 F.3d at 941 (citing Restatement § 2 intro. note). "Express actual authority derives from an act specifically mentioned to be done in a written or oral communication." *Id.* (quoting *Dist. Council of Iron Workers*, 124 F.3d at 1098). "Implied actual authority comes from a general statement of what the agent is supposed to do; an agent is said to have the implied authority to do acts consistent with that direction." *Id.* (quoting *Dist. Council of Iron Workers*, 124 F.3d at 1098). More specifically, "[i]mplied authority means actual authority either '(1) to do what is necessary, usual, and proper to accomplish or perform an agent's express responsibilities or (2) to act in a manner in which an agent believes the principal wishes the agent to act based on the agent's reasonable interpretation of the principal's

---

[8] Plaintiff purports to advance the agency theory of apparent authority (Opp'n 6), but there are no facts alleged in the SAC that form the premise of such a theory. "Apparent authority is the power held by an agent, or other actor, to affect a principal's legal relations with third parties when a third party reasonably believes the actor has authority to act on behalf of the principal and that belief is traceable to the principal's manifestation." *Makaron v. GE Sec. Mfg., Inc.*, No. CV-14-1274-GW (AGRx), 2015 WL 3526253, at *8 (C.D. Cal. May 18, 2015) (quoting Restatement § 2.03). Critical to the analysis of "apparent authority" is "proof of something said or done by the alleged principal, on which the plaintiff reasonably relied." *Thomas v. Taco Bell Corp.*, 582 F. App'x 678, 679 (9th Cir. 2014) (quoting *N.L.R.B. v. Dist. Council of Iron Workers of Cal. & Vicinity*, 124 F.3d 1094, 1099 (9th Cir. 1997)). Because the SAC does not allege any manifestation of Entity Defendants to which Plaintiff was privy and upon which he relied, the Court declines to construe the SAC as seeking to attach liability on a theory of apparent authority.

Furthermore, although not argued by the Plaintiff in his briefing, the Court similarly finds the SAC does not allege a factual predicate for liability under a theory of *respondeat superior*. This theory is applicable only where the principal is alleged to "have the right to control the actions of the agent that make the relationship between principal and [the] agent performing the service one of employment." Restatement § 2.04 cmt. b; *see Jones*, 887 F.3d at 450–51. "Agents who are retained as the need arises and who are not otherwise employees of their principal," such as Flynn, "are not, except in limited respects incorporated into the principal's enterprise." Restatement § 2.04 cmt. b. Indeed, the SAC alleges Flynn is an employee of SAS, not of either Entity Defendant. Therefore, *respondeat superior* does not apply. Restatement § 2.04 cmt. b.

manifestation in light of the principal's objectives and other facts known to the agent.'"
*McAdory*, 2021 WL 2321634, at *9 (quoting Restatement § 2.01 cmt. b). "Implied actual authority 'is proved on the basis of a principal's conduct other than written or spoken statements that explicitly authorize an action.'" *Id.* (quoting Restatement § 2.02 cmt. c).

The Restatement acknowledges that "[i]nteractions between principal and agent do not occur in a vacuum. Prior dealings between them are relevant to the reasonableness of the agent's understanding of the principal's manifestation." Restatement § 2.02 cmt. d. ("If a principal and an agent share an idiosyncratic understanding of what is meant by the principal's manifestations, that understanding controls the scope of the agent's actual authority, not the understanding that a reasonable person would have."). The Restatement explicitly provides that a principal's failure to address "prior occasions on which the agent has contravened instructions" is "likely to influence the agent's subsequent interpretation of instructions." Restatement § 2.02 cmt. f. The Restatement also provides that "[t]he incentive structure embedded in an agent's relationship with the principal may aggravate differences in perspective[.]" *Id.* ("Lapses from instructions may well follow if the agent's compensation is contingent on the volume of transaction concluded by the agent[.]")

With the Restatement's principles in mind, this Court finds that the SAC's allegations render plausible that, in executing sewer service upon Plaintiff, Flynn acted in a manner in which he believed Entity Defendants wished he would act, based on his reasonable interpretation of Entity Defendants' manifestation, shaped by his prior dealings with Entity Defendants, as well as the incentive structure embedded in their relationship.

As to prior dealings, the SAC alleges that publicly-available data reflects that Flynn routinely effectuated sewer service on behalf of Entity Defendants. In particular, it avers that in 2019 alone, Flynn was retained to effectuate service in 170 CCS lawsuits, that he effectuated personal service in 112 of those lawsuits, that only three of those 112 debtors actually answered those lawsuits, and that in many of those 109 other instances Entity Defendants obtained default judgments. (SAC ¶¶ 40, 48.) According to Plaintiff, Entity Defendants had the power to audit Flynn's service of process jobs and had policies and

procedures to prevent perjurious proofs of service.  (SAC ¶¶ 43, 51.)  Nevertheless, Entity Defendants continued to hire SAS and mandated that Flynn exclusively effectuate service in CCS's cases.  (*Id.*)  Moreover, in the State Action, Flynn's First Proof of Service was shown to be potentially perjurious, yet Entity Defendants re-retained Flynn in any event. (*Id.*)  Where, as here, "the principal's subsequent instructions do not address the history" of noncompliance with prior instructions, "the agent may well infer from the principal's silence that the principal will not demand compliance with the instructions to any degree greater than the principal has done in the past." Restatement § 2.02 cmt. f.  Thus, the Court finds that the SAC has alleged the history of the agency relationship between Entity Defendants and Flynn rendered reasonable Flynn's interpretation of Entity Defendants' instruction to effectuate service upon Plaintiff as one to effectuate sewer service.

The SAC also alleges that Flynn's compensation structure bore upon the reasonableness of that interpretation in that Entity Defendants paid Flynn only for completed service, thus incentivizing Flynn to affirm he had completed service in the first instance, even if that were not the case.  Consequently, the Court finds plausible that Plaintiff had good reason to believe that Entity Defendants expected him to execute sewer service because to do so would generally be in accordance with the type of behavior Entity Defendants' compensation structure rewarded.

Accordingly, this Court finds that Plaintiff adequately alleges Flynn acted with implied actual authority.

### b.   Ratification

"Ratification is the affirmative of a prior act done by another, whereby the act is given effect as if done by an agent acting with actual authority."  Restatement § 4.01.  "A principal ratifies an act by either 'manifesting assent that the act shall affect the person's relations,' or by 'conduct that justifies a reasonable assumption that the p[rincipal] so consents.'"  *McAdory*, 2021 WL 2321634, at *11 (citing Restatement § 4.01).

"There are two ways to ratify a third party's acts.  The first is by a 'knowing acceptance of the benefit.'"  *Henderson*, 918 F.3d at 1073 (citing Restatement § 4.01 cmt.

20cv0166

d).  "The second way a principal can ratify the acts of a third party is through 'willfull ignorance.'  Under the 'willful ignorance' theory, the principal may not know the material facts, but has 'ratified with awareness that such knowledge was lacking.'"  *Id.* (citing Restatement § 4.01 cmt. b).

The Court finds that the SAC adequately alleges Entity Defendants ratified Flynn's FDCPA violations through its willful ignorance.  The SAC alleges that Entity Defendants had access to data reflecting the substantial likelihood Flynn serially executed sewer service on their behalf in the past and the authority to audit Flynn's past service attempts "to detect potential inaccuracies and untruths[.]"  (*See*, *e.g.*, SAC ¶¶ 40, 43.)  Yet Plaintiff alleges that Entity Defendants failed to exercise any diligence, and, in fact, used Flynn to execute service in the State Action.  Moreover, the SAC avers that Entity Defendants retained SAS and Flynn to execute service in the State Action a second time, after Plaintiff moved to quash the First Proof of Service in light of Flynn's allegedly perjurious statements therein.  Simply put, the SAC alleges that Entity Defendants "had knowledge of facts that would have led a reasonable person to investigate further" whether Flynn's attestations about personal service were honest and accurate "but ratified [Flynn's] acts anyway without investigation" by retaining—and subsequently re-retaining—Flynn to execute service upon Plaintiff and filing the subject Proofs of Service.  *Kristensen v. Credit Payment Servs., Inc.*, 879 F.3d 1010, 1015 (9th Cir. 2018); *see also Schick v. Caliber Home Loans, Inc.*, No. 20-CV-00617-VC, 2020 WL 4013224, at *1 (N.D. Cal. July 16, 2020)

Accordingly, the Court finds that the SAC's allegations, if true, could at least support a conclusion that Entity Defendants ratified Flynn's conduct and, consequently, is liable for it under the FDCPA.

### D.    Viability of Class Action Claims

As in their first motion to dismiss, Entity Defendants again dispute Plaintiff's class allegations on the basis that the class definition, among other things, is vague, overbroad, and not ascertainable.  For the reasons stated in its prior Order, the Court finds that these arguments are premature.  The Ninth Circuit has stated that Rule 12(b)(6) is an

20cv0166

inappropriate vehicle for challenging class claims because a class action is a procedural device and not a claim for relief subject to the authority of that Rule; other Rules (namely, Rule 23) exist to address the fitness of claims for class certification, and differing standards of review govern orders on motions to dismiss than orders on class certification motions. *Whittlestone, inc. v. Handi-Craft Co.*, 618 F.3d 970, 974 (9th Cir. 2010); *see Clerkin v. MyLife.Com*, No. C 11-00527 CW, 2011 WL 3809912, at *3 (N.D. Cal. Aug. 29, 2011) (denying Rule 12(b)(6) motion to dismiss class claims based on *Whittlestone*).

Entity Defendants' challenges to Plaintiff's class claims thus are not appropriately resolved on the instant Motion.  These inquiries are reserved for determination if and when Plaintiff moves for certification of the putative class.  The Court therefore denies Defendants' Motion as to Plaintiff's class claims.

## IV.    CONCLUSION

Based on the foregoing, the Court **GRANTS IN PART** and **DENIES IN PART** Entity Defendant's Motion.  The Court **GRANTS WITHOUT LEAVE TO AMEND** Entity Defendants' Motion on the basis that Plaintiff does not sufficiently state a direct FDCPA claim against CCS.  However, the Court **DENIES** Entity Defendants' Motion as to the direct claim against P&F and the vicarious claim against both Entity Defendants.

**IT IS SO ORDERED.**

**DATED: December 16, 2021**

Hon. Cynthia Bashant
United States District Judge

20cv0166